CITIZENS MUTUAL AUTOMOBILE INSURANCE CO., subrogee of Truckway Service, Inc., Plaintiff,

v.

FIREMAN'S FUND INSURANCE CO., Defendant.

Civ. A. No. 4529.

United States District Court
W. D. Michigan, S. D.

Oct. 28, 1964.

Luyendyk, Hainer, Hillman, Karr & Dutcher, Grand Rapids, Mich., Robert N. Hammond, Grand Rapids, Mich., of counsel, for plaintiff.

Mitts, Smith & Haughey, Grand Rapids, Mich., David O. Haughey, Grand Rapids, Mich., of counsel, for defendant.

FOX, District Judge.

This action arises out of a two-truck collision which resulted in the death of both drivers. The administratrix of Clifford A. Crawford, one of the deceased drivers, commenced an action against Laddie Steven Nemec, the other driver, and his employer, Telischak Trucking, Inc. and Mike Telischak, dba Telischak Trucking, and against Truckway Service, Inc. That action resulted in a verdict in favor of the plaintiff therein, finding (1) that Nemec was negligent, (2) that his

negligence was a proximate cause of the collision, and (3) that Crawford was not negligent. Damages were assessed at $101,348, and judgment was later entered in the amount of $80,000, pursuant to an agreement between all the parties.

The judgment was satisfied by the plaintiff herein, Citizens Mutual Automobile Insurance Company, the insurer of Truckway Service, Inc. In the present action Citizens Mutual seeks indemnification for the amount of the judgment, plus its costs of defending the cause. Fireman's Fund Insurance Company, the insurer of Telischak Trucking and Telischak Trucking, Inc., seeks by its counterclaim to recover its costs of defense.

The truck operated by Nemec at the time of the accident was registered in the name of himself and his wife. However, Telischak Trucking was the lessee of the truck under the terms of a one-year lease between it and the Nemecs. Nemec carried no liability insurance on the truck. By the terms of the lease, Telischak Trucking assumed all liability.

An informal and unwritten agreement had existed between the Telischak companies and Truckway Services, Inc. for several years regarding interchange of equipment and drivers. Whenever one company had a special need for additional trucks and drivers, at a time when the other had them available, it would call upon the other to provide them. This arrangement was properly certified by the Michigan Public Service Commission.

Since the business of Telischak was most active during the summer and that of Truckway most active during the winter months, this arrangement proved very satisfactory.

The Telischak-Nemec lease provided for complete control of the vehicle by Telischak, and further provided that the vehicle was to be driven by an employee of Telischak at all times it was in the service of Telischak. Nemec was free to have the tractor fueled and serviced anywhere, but considering all aspects of the relationship, it is apparent that Telischak had the right to complete control of the vehicle.[1]

The Telischak dispatcher would call available drivers in the order of seniority for the Truckway runs. James McDaniels, the dispatcher, did in fact advise Nemec of the availability of the Truckway load, which was the last trip he made.

The tractor bore the distinctive markings of the Telischak truck fleet, but since, under Interstate Commerce Commission regulations, only Truckway had certification to carry the load in question, Nemec was provided with a decal containing the Truckway name and address, and its Michigan Public Service Commission permit numbers.

Telischak drivers were paid by Telischak for these runs after it had received full payment from Truckway. No payment was ever made for the run in question, because the load was not delivered.

As to Truckway, these drivers would keep a log book for them, have the trucks loaded and safety checked on Truckway premises, signed papers as an agent of Truckway at the point of consignment,

---

1. The lease here in question provided in part as follows:

"(2) It is agreed that the control of the equipment shall be *absolute in the lessee* for the full period of this lease.

"(3) It is agreed that the equipment shall not be used during the full period of this lease for any purpose other than as directed by the lessee, in performance of its services to the public.

"(5) It is agreed that *the lessee shall be responsible to third parties for all lawful and proper operations of said equipment during the period of this lease.*

"(7) The lessee expressly reserves the right to control the manner, means and detail of and by which the driver of such leased equipment performs his services as well as the end accomplished. It is agreed that the *equipment* which is subject to this lease *shall be driven by an employee of lessee at all times it is in the service of lessee.*" (Emphasis supplied.)

and followed routes directed by Truckway.

■ It is the opinion of this court that at the time of the accident involved here, Nemec was an employee of both trucking firms, and in addition, consideration of the Michigan Ownership Liability Statute (M.S.A. § 9.2101 [P.A.1949, No. 300]) establishes the fact that each must respond in damages.

■ Although there was a determination before the State Workmen's Compensation Appeal Board to the same effect, that decision is not binding upon this court because of the inapplicability of the workmen's compensation test of employer-employee relationship to a case of this kind. Tata v. Benjamin Muskovitz Plumbing and Heating, 354 Mich. 695, 94 N.W.2d 71. However, on independent grounds, it can be determined that Nemec was in fact an employee of both at the time of the accident.

As to Truckway, it is apparent that Nemec was an employee of theirs according to traditional doctrines of the master-servant relationship.

He was in fact an agent of Truckway, for he signed a receipt for the load in the name of Truckway, and would have obtained the consignee's signature at the destination point.

Furthermore, the Interstate Commerce Commission permits to Truckway specifically authorized the hauling of salt, which was the load in question and which Telischak was unable to haul under its

Interstate Commerce Commission permits. And the route which Nemec followed was in accordance with that dictated by Truckway, pursuant to Interstate Commerce Commission regulations governing Truckway.

Therefore, Nemec was driving for Truckway at the time of the accident, hauling their load, and was to report back to them with the necessary papers upon completion of the run. Under the doctrine of *respondeat superior*, Truckway is liable. Riser v. Riser, 240 Mich. 402, 215 N.W. 290 (1927).

As to Telischak, there are facts by which Nemec must be considered to have been an employee of that company also at the time of the accident. The lease vested absolute control in the lessee for the period of the lease (Para. 2); it stated that the equipment was to be used only at its direction "in performance of *its services* to the public," (Para. 3) (emphasis supplied); and in paragraph 7 it asserted that the equipment was to be driven at all times by an employee of the lessee.

In addition, Nemec was paid exclusively by Telischak, even for the runs of the type involved here, and he was dispatched to these jobs by the Telischak dispatcher.

However, absent consideration of facts which would establish an employer-employee relationship, the case of Moore v. Palmer, 350 Mich. 363, 86 N.W.2d 585 is controlling as to the liability of Telischak.[2]

2. M.S.A. § 9.2101 reads as follows:
"§ 9.2101 Civil actions.] Sec. 401. Nothing herein contained shall be construed to abridge the right of any person to prosecute a civil action for damages for injuries to either person or property resulting from a violation of any of the provisions of this act by the owner or operator of a motor vehicle, his agent or servant. The owner of a motor vehicle shall be liable for any injury occasioned by the negligent operation of such motor vehicle whether such negligence consists of a violation of the provisions of the statutes of the state or in the failure to observe such ordinary care in such operation as the rules of

the common law requires. The owner shall not be liable, however, unless said motor vehicle is being driven with his or her express or implied consent or knowledge. It shall be presumed that such motor vehicle is being driven with the knowledge and consent of the owner if it is driven at the time of said injury by his or her father, mother, brother, sister, son, daughter, or other immediate member of the family: Provided, however, That no person, transported by the owner or operator of a motor vehicle as his guest without payment for such transportation shall have a cause of action for damages against such owner or operator for injury, death or

Moore v. Palmer, supra, expressly overruled the contention that liability under this statute was in any way conditional upon the traditional *respondeat superior* doctrine.

"We now reiterate. The Michigan owner liability act, C.L.S.1954, § 257.401 (Stat.Ann.1952 Rev. § 9.-2101), is an enactment founded upon the police power of the State. Its obvious purpose is to make owners of automobiles liable for the negligent acts of those to whom they entrust their vehicles. Liability under the statute is not limited by the common-law tests applicable to the master-servant relationship. The fact that a common-law action under the master-servant doctrine preceded the statute (and still exists) does not create any exception from the terms of the statute in favor of employers as a class." 350 Mich. at 394, 86 N.W.2d at 596.

Furthermore, in explaining the purpose of the statute, the court quoted with approval from Johnson v. Sergeant, 168 Mich. 444, 134 N.W. 468:

"The statute we interpret here is not a derivative of the *respondeat superior* doctrine. It is a measure adopted by the legislature to promote public safety by holding automobile owners accountable for certain negligent acts of the persons to whom they entrust their automobiles. Johnson v. Sergeant, 168 Mich. 444, 134 N.W. 468 (2 NCCA 334); Stapleton v. Independent Brewing Co., 198 Mich. 170, 164 N.W. 520, L.R.A. 1918A, 916. It would be a strange construction of such a statute to hold an owner for the ordinary negligence of the person whom he

allowed to drive his car and free him from liability if his chosen driver was found guilty of gross negligence or wilful and wanton misconduct." Peyton v. Delnay, 348 Mich. 238, 83 N.W.2d 204, 209.

■ The public policy underlying the statute is thus to insure financial responsibility for those injured as the result of negligent operation of motor vehicles.

In the present case, that responsibility is insured by the statute, for under M.S. A. § 9.1837 [P.A.1949, No. 300], a lessee for more than thirty days is considered the owner of the vehicle.[3]

While ordinarily M.S.A. § 9.2101, read in conjunction with M.S.A. § 9.1837, would result in full liability attaching to Telischak and its insurer, the facts of this case remove it from that determination.

The purpose of these statutes, as above related, is to provide adequate recourse for injured third parties. However, as between the parties themselves, at least in this case, a reading of the statute so as to make it exclusive would approach a penal interpretation of the statute.

■ For here there are clearly delineated control elements present on the side of each party seeking to hold the other responsible. To attach liability to only one party in this situation would be unfair, for there does exist justification for finding both liable, and the statute should not be read so as to exculpate one of the parties in a situation such as this.

The court further finds that under the facts presented here, in which Nemec is seen to be an employee of both Telischak and Truckway at the time of the accident, he was covered in his individual

loss, in case of accident, unless such accident shall have been caused by the gross negligence or wilful and wanton misconduct of the owner or operator of such motor vehicle and unless such gross negligence or wilful and wanton misconduct contributed to the injury, death or loss for which the action is brought." (C.L. '48, § 257.401 [P.A.1949, No. 300].)

3. M.S.A. § 9.1837 reads: " 'Owner' means: (a) Any person, firm, association or corporation renting a motor vehicle or having the exclusive use thereof, under a lease or otherwise, for a period of greater than 30 days. * * * "

capacity by the insurance contracts of both parties to the instant litigation.

The defendant's policy, in Agreement III (2) extends coverage to "any person while using an owned automobile or a hired automobile and any person or organization legally responsible for the use thereof, provided the actual use of the automobile is by the named insured or with his permission * * *." Nemec would clearly be within the intent of this language.

Plaintiff's policy, under EXTENDED INSURANCE AGREEMENTS (1) provides in subsection (a) that an insured is "any person or organization legally responsible for the use of the automobile."

■  Plainly, Nemec, as a person legally responsible for the operation of the vehicle at the time of the accident, would be covered by both policies.

■  There is language in the defendant's policy which excludes coverage "with respect to any hired automobile, to the owner, or a lessee thereof other than the named insured, or to any agent or employee of such owner or lessee." The contention that under this language Nemec is not an insured is vitiated by M.S.A. § 9.1837 which makes Telischak, and not Nemec, the owner of the vehicle for purposes of the Michigan Ownership Liability Statute, M.S.A. § 9.2101.

■  The policies of both parties to this suit contain "excess" clauses, providing that the face amounts are collectible only in excess of any other valid and collectible insurance. Under the facts of this case, these clauses are of no effect, since each policy provides valid and collectible insurance. Therefore, they defeat one another and both policies are in full force and effect.

■  Where a loss is covered by two policies of insurance, it should be prorated between the insurers, with each contributing ratably. Milan v. Providence Washington Insurance Co., D.C., 227 F.Supp. 251, Lititz Mutual Insurance Co. v. Lengacher, 7 Cir., 248 F.2d 850.

■  The policy of plaintiff in this case provided $100,000 coverage in this instance; that of defendant provided $200,000 coverage. Therefore, a ratable contribution would result in payment of one-third of the judgment, or $26,665, by plaintiff, and payment of two-thirds, or $53,335, by defendant.

Judgment will be entered accordingly.