HABERL v ROSE

Docket Nos. 177337, 178284. Submitted January 10, 1996, at Grand Rapids. Decided September 2, 1997, at 9:05 A.M. Leave to appeal sought.

Timothy R. and Pamela Haberl brought an action in the Branch Circuit Court against Jacquelyn Rose, seeking damages for injuries sustained by Timothy Haberl when a vehicle driven by the defendant struck the plaintiffs' vehicle. The defendant alleged she was entitled to governmental immunity because, although she was driving her own vehicle at the time of the accident, she was acting within the scope of her employment with a governmental employer at the time of the accident. The jury returned a verdict awarding damages to the plaintiffs, but also determined that the defendant had been acting within the scope of her employment when the accident occurred. The court, Michael H. Cherry, J., entered a judgment and order of no cause of action, finding that governmental immunity applied to bar the plaintiffs' action. The plaintiffs appealed from the judgment and order (Docket No. 177337) and the defendant appealed from the trial court's denial of her motion for sanctions pursuant to MCR 2.405. The appeals were consolidated.

The Court of Appeals *held*:

1. The major exception to governmental immunity involving the negligent operation of a government-owned vehicle, MCL 691.1405; MSA 3.996(105), is consistent with the policy evident in the civil liability act, MCL 257.401; MSA 9.2101. The owner liability statute applies to this case even though the owner of the automobile was also the negligent driver. The civil liability statute is more specific than the general broad grant of immunity provided in MCL 691.1407(2); MSA 3.996(107)(2) and governs the outcome of this case. MCL 691.1405; MSA 3.996(105) by its own terms does not apply to this case.

2. Because both MCL 691.1405; MSA 3.996(105) and MCL 257.401; MSA 9.2101 were enacted to serve the same purpose of imposing liability on the owner of a vehicle, to allow the result reached by the court to stand would frustrate the purpose behind both statutes.

3. By enacting the civil liability act as well as carving a specific automobile exception from the broad governmental immunity act, the Legislature expressed the intent that those who are injured by the negligent operation of a motor vehicle are entitled to compensation regardless of the ownership of the vehicle. The civil liability statute specifically applies to this case and controls the outcome. The trial court's judgment must be vacated and the case must be remanded for entry of a judgment for the plaintiffs in the amount of the jury's verdict.

4. The court properly granted summary disposition of the plaintiffs' gross negligence claim.

5. The issue regarding the denial of the motion for sanctions is moot.

Vacated and remanded.

SAAD, J., dissenting, stated that the defendant is immune from liability under the clear language of MCL 691.1407; MSA 3.996(107). The owner liability statute, MCL 257.401(1); MSA 9.2101(1), does not apply when the owner and the driver are the same person and therefore does not apply to this case. The Legislature, in enacting the individual immunity statute, MCL 691.1407; MSA 3.996(107), chose not to create an exception to immunity for individuals when they are driving their own vehicles in the scope of their government responsibilities.

1. AUTOMOBILES — OWNER LIABILITY STATUTE.

The owner liability statute, MCL 257.401(1); MSA 9.2101(1), is intended to place the risk of damage or injury on the owner of a motor vehicle, the person who has ultimate control of the vehicle, as well as on the person who is in immediate control; the statute applies in a situation where the owner of the motor vehicle is also the negligent driver.

2. STATUTES — JUDICIAL CONSTRUCTION.

When the Court of Appeals examines two statutes covering the same subject it must construe them together to give meaning to both, if possible; when two statutes conflict and one is specific while the other is more general, the specific statute prevails.

3. AUTOMOBILES — STATUTES — CONFLICT OF LAWS — GOVERNMENTAL IMMUNITY.

The broad grant of immunity provided in MCL 691.1407(2); MSA 3.996(107)(2) is general in nature and applies to a variety of different situations; the civil liability statute, MCL 257.401(1); MSA 9.2101(1), is a more specific statute and governs the outcome of an action involving the negligent use of an automobile owned by a

government employee where an accident occurred during the course of the owner's employment.

4. AUTOMOBILES — GOVERNMENTAL IMMUNITY.

Individual owner liability arises in a situation where a government employee, while driving the employee's own vehicle during the course of employment negligently causes damages (MCL 257.401[1], 691.1405, 691.1407; MSA 9.2101[1], 3.996[105], 3.996[107]).

*Ferriby & Houston* (by *Robert L. Ferriby, Jr.*), and *Joseph W. Hayes*, for the plaintiffs.

*James, Dark & Brill* (by *Brett A. Howell* and *David M. Dark*), for the defendant.

Before: NEFF, P.J., and SAAD and MARKEY, JJ.

NEFF, P.J. In these consolidated appeals, plaintiffs appeal as of right from the trial court's judgment of no cause of action following a jury trial on plaintiffs' automobile negligence claim (Docket No. 177337) and defendant appeals the trial court's denial of her motion for sanctions (Docket No. 178284). We vacate the trial court's order, which found defendant entitled to governmental immunity and remand for entry of a judgment on the jury's verdict of $260,000 in favor of plaintiffs.

I

On July 5, 1991, defendant, while acting within the scope of her employment with a governmental employer and driving her own car, struck plaintiffs' car, causing Mr. Haberl serious injuries. As a result, plaintiffs brought a negligence action against defendant for injuries sustained in the accident. Ultimately, defendant moved for summary disposition under MCR 2.116(C)(7) and (10), arguing the claim was barred by governmental immunity pursuant to MCL

691.1401 *et seq.*; MSA 3.996(101) *et seq.* Plaintiffs responded that defendant was not protected by governmental immunity because she was liable under the civil liability act, MCL 257.401; MSA 9.2101.

The trial court heard arguments concerning defendant's motion for summary disposition and disagreed with plaintiffs' analysis. The court stated that only the issue of "ownership liability" remained because it had not decided whether governmental immunity applied. According to the court, if the jury found defendant was acting within the scope of her employment when the accident occurred, then governmental immunity would be applicable, and plaintiffs' case would fail.

At trial, the facts concerning the accident were essentially uncontested, with defendant admitting negligence and that her negligence caused plaintiffs' injuries. The jury returned a verdict that defendant was acting within the scope of her employment at the time of the accident and also awarded $260,000 in damages to plaintiffs.

The trial court then referred to the prior summary disposition hearing and stated that because defendant was found to have been acting within the scope of her employment, a judgment of no cause of action would be entered.

II

A

In 1986, the Michigan Legislature enacted 1986 PA 175, amending MCL 691.1407; MSA 3.996(107), which provides for individual statutory immunity. In doing so, the Legislature has provided for broad individual governmental immunity from tort liability in part as follows:

[E]ach officer and employee of a governmental agency, each volunteer acting on behalf of a governmental agency . . . shall be immune from tort liability for injuries to persons or damages to property caused by the officer, employee, or member while in the course of employment . . . while acting on behalf of a governmental agency if all of the following are met:

(a) The officer, employee, member, or volunteer is acting or reasonably believes he or she is acting within the scope of his or her authority.

(b) The governmental agency is engaged in the exercise or discharge of a governmental function.

(c) The officer's, employee's, member's, or volunteer's conduct does not amount to gross negligence that is the proximate cause of the injury or damage. As used in this subdivision, "gross negligence" means conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results. [MCL 691.1407(2); MSA 3.996(107)(2).]

However, a specific exception involving government-owned vehicles exists, which limits the broad sweep of governmental immunity. That statute provides:

Governmental agencies shall be liable for bodily injury and property damage resulting from the negligent operation by any officer, agent, or employee of the governmental agency, of a motor vehicle of which the governmental agency is owner . . . . [MCL 691.1405; MSA 3.996(105).]

In *Trommater v Michigan*, 112 Mich App 459, 467; 316 NW2d 459 (1982), this Court held that this statutory exception "serves the purpose of ensuring that redress is available against the owner of the vehicle, in this case the state."

B

This major exception to governmental immunity is consistent with the policy evident in the civil liability act, which imposes liability on the owners of privately owned vehicles.

1

The civil liability act provided in part at the time of the accident:

Nothing herein contained shall be construed to abridge the right of any person to prosecute a civil action for damages for injuries to either person or property resulting from a violation of any of the provisions of this act by the owner or operator of a motor vehicle, his or her agent or servant. The owner of a motor vehicle shall be liable for any injury occasioned by the negligent operation of the motor vehicle whether the negligence consists of a violation of the provisions of the statutes of the state or in the failure to observe such ordinary care in the operation of the motor vehicle as the rules of the common law requires. [MCL 257.401(1); MSA 9.2101(1).][1]

The purpose of this statute is to place the risk of damage or injury on the owner, the person who has ultimate control of the vehicle, as well as on the per-

---

[1] In 1995, the Legislature enacted 1995 PA 98, which changed the language of the statute in part as follows:

This section shall not be construed to limit the right of a person to bring a civil action for damages for injuries to either person or property resulting from a violation of this act by the owner or operator of a motor vehicle or his or her agent or servant. The owner of a motor vehicle is liable for an injury caused by the negligent operation of the motor vehicle whether the negligence consists of a violation of a statute of this state or the ordinary care standard required by common law.

These minor grammatical changes do not alter either the statute's clear meaning or our analysis.

son who is in immediate control. *North v Kolomyjec*, 199 Mich App 724, 726; 502 NW2d 765 (1993). The public policy underlying the statute is to ensure financial responsibility for those injured as a result of negligent operation of motor vehicles. See *Citizens Mut Automobile Ins Co v Fireman's Fund Ins Co*, 234 F Supp 931, 935 (WD Mich, 1964). This aspect of the owner liability statute was passed because the common-law liability " 'was unable to cope with the rising tide of injuries resulting from the use of the new mechanism, the automobile.' " *Kolomyjec, supra* at 726 (citation omitted).

2

Although the owner liability statute may have been enacted to create liability for a non-driving owner and prior cases have apparently assumed that limited application, there is no language in the statute warranting this conclusion[2]. Indeed, the beginning of the statute explicitly preserves the common-law liability available against the owner.

Hence, we conclude that the owner liability statute applies here even though the owner of the automobile

---

[2] The dissent assumes for purposes of analysis that the civil liability statute applies where the owner and the driver are the same person, a conclusion we find compelled by the plain language of the statute. See also *Trommater, supra*. However, in dicta and in factual situations different from this one, other writers have assumed that the legislative intent underlying the statute was to impose liability on owners for negligent operation by permissive third-party users only, essentially a negligent entrustment theory. *Moore v Palmer*, 350 Mich 363; 86 NW2d 585 (1957); *Stapleton v Independent Brewing Co*, 198 Mich 170; 164 NW 520 (1917); *Kolomyjec, supra* at 725-726. Although the legislative intent behind the enactment of this statute may have been to create liability where none previously existed for a nondriving owner of a vehicle, the statutory language is not so limiting. It applies by its own terms to create owner liability for "*any injury* occasioned by the negligent operation of the motor vehicle . . . ." MCL 257.401(1); MSA 9.2101(1) (emphasis added).

was also the negligent driver. MCL 257.401(1); MSA 9.2101(1); see also *Berry v Kipf*, 160 Mich App 326, 328-329; 407 NW2d 648 (1987). Under common law, of course, an owner of a motor vehicle does not escape liability simply because the owner was driving. Also, our Supreme Court has held that the statute extended and complemented the common law with regard to liability. *Frazier v Rumisek*, 358 Mich 455, 457; 100 NW2d 442 (1960). It would be an anomalous result indeed if this statute, created to expand a plaintiff's right of recovery, was employed instead as a bar to that recovery. This analysis compels the conclusion that the statute applies to the fact pattern presented in this case.

C

The question then becomes, which of these two seemingly conflicting statutes applies in this case. To answer the question, we turn to rules of statutory construction.

1

The cardinal rule of statutory construction is to identify and give effect to the intent of the Legislature. *Turner v Auto Club Ins Ass'n*, 448 Mich 22, 27; 528 NW2d 681 (1995). The first step in this process is to focus on the language of the statute. *Id.* If the statutory language is certain and unambiguous, judicial construction is neither required nor permitted. *Id.* Further, when this Court examines two statutes covering the same subject, it must construe them together to give meaning to both, if possible. *Bauer v Dep't of Treasury*, 203 Mich App 97, 100; 512 NW2d 42 (1993). When two statutes conflict, however, and

one is specific while the other more general, the specific statute prevails. *Id.*

Here, we conclude that the more specific of the two statutes is the civil liability statute. The broad grant of immunity provided in MCL 691.1407(2); MSA 3.996(107)(2), the statute on which defendant must rely, is general in nature, and applies to a variety of different situations. Further, MCL 691.1405; MSA 3.996(105), which directly relates to immunity involving a state-owned vehicle, by its terms does not apply. The civil liability statute, however, specifically provides that owners of automobiles are liable when the negligent use of their automobiles results in injury.[3] Accordingly, we conclude that the civil liability statute governs the outcome in this case.

2

Our holding clearly achieves the intent and purpose of the civil liability statute. Indeed, it is even within the purpose of MCL 691.1405; MSA 3.996(105), which provides for governmental liability in negligence cases involving state-owned vehicles. As this Court stated in *Trommater, supra* at 467:

> The statutory exception, confined solely to state-owned vehicles, serves the purpose of ensuring that redress is available against the owner of the vehicle, in this case the state. *This is consistent with the Legislature's imposition of liability on the owner of a privately owned vehicle* under MCL 257.401; MSA 9.2101. The exception also distinguishes

---

[3] There are really two parallel theories of liability here; defendant claims immunity from common-law negligence as the *driver* of the vehicle by virtue of MCL 691.1407; MSA 3.996(107) because she was a governmental employee in the course of her employment when the accident occurred. However, she enjoys no such immunity from the duties imposed on her as the *owner* of the vehicle by MCL 257.401(1); MSA 9.2101(1).

between state-owned and privately owned vehicles so as to
preserve governmental immunity from liability for accidents
caused by vehicles that are neither kept nor maintained by
the state. It is reasonable, at least, for the Legislature to
provide that the *state* will not be held liable for vehicles
over which it has no control. [Emphasis added.]

Thus, while this Court's holding in *Trommater*, at
first glance, could lead to an inference that MCL
691.1405; MSA 3.996(105) provides defendant with
immunity, a closer analysis leads to a different con-
clusion. The holding in *Trommater*, simply stated, is
that the government is not liable for negligence aris-
ing out of the use of privately owned vehicles. The
Court was not presented with and did not decide the
question whether individual owner liability arises in a
situation where, as here, the private owner, a govern-
ment employee who was in the course of her employ-
ment while driving her vehicle, also negligently
caused the damages. Under these facts, because both
MCL 691.1405; MSA 3.996(105) and MCL 257.401; MSA
9.2101 were enacted to serve the same purpose—the
imposition of liability on the owner of the vehicle—
we conclude that to allow the result reached by the
trial court in this case to stand would be to frustrate
the purpose behind both statutes.

3

Were we to reach the result requested by defend-
ant, the following anomalous results would follow: (1)
if a government employee negligently caused an acci-
dent while driving a government-owned vehicle, the
injured person would have redress against the owner
of the vehicle, the government, MCL 691.1405; MSA
3.996(105); (2) if a government employee negligently
caused an accident while driving a motor vehicle

owned by a third person, the injured person would have redress against the owner of the vehicle, the third person, MCL 257.401; MSA 9.2101, see, e.g., *Abrams v Sinon*, 44 Mich App 166; 205 NW2d 295 (1972), aff'd 390 Mich 387; 212 NW2d 14 (1973); (3) if, however, a government employee negligently caused an accident while driving a motor vehicle owned by that employee, the injured person would have no redress. Not only, as stated above, would this result frustrate the clear policy in Michigan as statutorily expressed, it would also encourage governmental agencies to stop providing motor vehicles to their employees in order to avoid liability. Such a result would be untenable. Our dissenting colleague, in somewhat contradictory conclusions, opines that a broad reading of the immunity statute along with a narrow reading of the liability statute would lead us to the opposite result from the one reached here. To the contrary, reasoning along that track leads to a finding that defendant is liable. To conclude otherwise, as does the dissenter, requires reading language into the statutes that is not there and impermissibly steps into legislative territory. While we might agree that the Legislature would be well advised to create such an exception for people in the same circumstances as defendant, it has not done so and we decline the invitation to act in its stead. Indeed, it is the dissent that urges "re-writing" the statutes in question and advocates overstepping the bounds of proper judicial authority.

III

By enacting the civil liability act as well as carving a specific automobile exception from the broad gov-

ernmental immunity act, the Legislature expressed
the intent that those who are injured by the negligent
operation of a motor vehicle are entitled to compen-
sation regardless of the ownership of the vehicle. To
allow defendant to escape liability here would frus-
trate the purpose of the two statutes. To avoid this
unacceptable result, we hold that the civil liability
statute specifically applies to this case and controls
the outcome.

Accordingly, the trial court's judgment of no cause
of action is vacated and this case is remanded for
entry of judgment on the jury's verdict of $260,000 in
favor of plaintiffs.

IV

Plaintiffs also argue that the trial court erred in
granting summary disposition pursuant to MCR
2.116(C)(10) of their claim that defendant acted with
gross negligence. We disagree.

Pursuant to MCL 691.1407(2)(c); MSA 3.996(107)
(2)(c), gross negligence is "conduct [which was] so
reckless as to demonstrate a substantial lack of con-
cern for whether an injury results." Summary disposi-
tion is appropriate only where reasonable minds
could not have reached different conclusions with
regard to whether the defendant's conduct amounted
to gross negligence. *Harris v Univ of Michigan Bd of
Regents*, 219 Mich App 679, 694; 558 NW2d 225
(1996).

After careful review of the record, we agree with
the trial court that plaintiffs failed to present evi-
dence that would permit reasonable minds to differ
regarding this issue. Although defendant's acts were
sufficient to constitute ordinary negligence, they did

not rise to the level of gross negligence. Accordingly, the trial court properly granted summary disposition of plaintiffs' gross negligence claim.

V

In her consolidated appeal (Docket No. 178284), defendant appeals the trial court's denial of her motion for sanctions pursuant to MCR 2.405. In light of our determination that the jury's verdict must be reinstated, this issue is moot.

Vacated and remanded for entry of a judgment on the jury's verdict of $260,000 in favor of plaintiffs. We do not retain jurisdiction. Plaintiffs, being the prevailing party, may tax costs pursuant to MCR 7.219.

MARKEY, J., concurred.

SAAD, J. (*dissenting*). I respectfully dissent.

I

NATURE OF THE CASE

Defendant, a school employee, drove her *own* car and, while acting within the scope of her employment, she negligently collided with plaintiff Tim Haberl's car, causing him serious injuries. Because defendant was performing a governmental function when she caused the accident, and because she was not grossly negligent, she should be immune from tort liability under the clear language of MCL 691.1407; MSA 3.996(107). We should reject plaintiffs' claim that MCL 257.401(1); MSA 9.2101(1) (which imposes liability upon the owner of a vehicle for negligence) applies to create liability here where governmental immunity explicitly precludes it because the individual governmental immunity law admits of no such exception or construction.

II

ANALYSIS

Before 1986, the law of governmental immunity as it related to *individual* officers, employees, and agents, was a creature of judicial decisionmaking. *Nalepa v Plymouth-Canton Community School Dist,* 207 Mich App 580, 585; 525 NW2d 897 (1994). In 1984, in an attempt to clarify and comprehensively explain governmental immunity law, the Michigan Supreme Court decided *Ross v Consumers Power Co (On Rehearing),* 420 Mich 567; 363 NW2d 641 (1984). In response to *Ross,* in 1986, the Legislature enacted 1986 PA 175, which amended MCL 691.1407; MSA 3.996(107), *Nalepa, supra* at 585, and created, for the first time in Michigan, *statutory* immunity for individuals. The specific portion of the governmental immunity act at issue here (immunity for individuals, MCL 691.1407; MSA 3.996[107]), provides in relevant part:

(2) Except as otherwise provided in this section, and without regard to the discretionary or ministerial nature of the conduct in question, each officer and employee of a governmental agency, each volunteer acting on behalf of a governmental agency, and each member of a board, council, commission, or statutorily created task force of a governmental agency shall be immune from tort liability for injuries to persons or damages to property caused by the officer, employee, or member while in the course of employment or service or volunteer while acting on behalf of a governmental agency if all of the following are met:

(a) The officer, employee, member, or volunteer is acting or reasonably believes he or she is acting *within the scope of his or her authority.*

(b) The governmental agency is engaged in the exercise or discharge of a governmental function.

(c) The officer's, employee's, member's, or volunteer's *conduct does not amount to gross negligence* that is the

proximate cause of the injury or damage. As used in this subdivision, "gross negligence" means conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results. [Emphasis added.]

Here, defendant was "acting on behalf of a governmental agency" when, as a secretary to the superintendent, she distributed agendas for the upcoming board meeting. In addition, all three requisites for individual immunity were met here. First, the jury found that she acted within the scope of her employment. Second, the board of education was unquestionably engaged in the exercise of a governmental function. Finally, the record supports the circuit court's conclusion that defendant was not grossly negligent in causing the accident. Therefore, I would find that plaintiffs' case against defendant was properly dismissed because defendant was immune from liability.

III

CIVIL LIABILITY STATUTE IS INAPPLICABLE

Plaintiffs argue, and the majority agrees, that the Michigan civil liability statute, MCL 257.401(1); MSA 9.2101(1) applies to this case, and supports liability notwithstanding the governmental immunity statute. Though the majority's reasoning has surface appeal, it cannot withstand closer scrutiny. The civil liability statute, which imposes liability upon the owner of a motor vehicle, has been a part of Michigan statutory law in some form since it was originally enacted by 1909 PA 318, § 10. In its current form, it provides in relevant part:

(1) This section shall not be construed to limit the right of a person to bring a civil action for damages for injuries

to either person or property resulting from a violation of this act by the owner or operator of a motor vehicle or his or her agent or servant. *The owner of a motor vehicle is liable for an injury caused by the negligent operation of the motor vehicle whether the negligence consists of a violation of a statute of this state or the ordinary care standard required by common law.* [MCL 257.401(1); MSA 9.2101(1) (emphasis added).]

The purpose of this statute was to place the risk of damage or injury on the person who has ultimate control of the vehicle—the owner. *North v Kolomyjec*, 199 Mich App 724, 726; 502 NW2d 765 (1993). The public policy underlying the statute is to ensure financial responsibility for those injured as a result of negligent operation of motor vehicles—that is, to ensure compensation for victims of negligent use of a motor vehicle. See *Citizens Mut Automobile Ins Co v Fireman's Fund Ins Co*, 234 F Supp 931, 935 (WD Mich, 1964). In *Dale v Whiteman*, 388 Mich 698, 703; 202 NW2d 797 (1972), the Michigan Supreme Court stated:

"The owner liability statute . . . was passed in response to an overwhelming public need. Common-law liability, circumscribed as it was by the doctrine of bailment, *respondeat superior*, agency, and the like, was unable to cope with the rising tide of injuries resulting from the use of the new mechanism, the automobile. Principal among the legislative answers were the owner liability laws. Their purpose . . . was to extend and complement the common law. The legislative theory was simple to state and broadly applicable: An owner was liable for the negligent operation of the machine owned by him when he had consented to its use." [Citation omitted.]

Implicit in this rationale is the conclusion that the liability statute does not apply when the owner and the driver are the same person. See *Kolomyjec, supra*

at 725-726 (statute "created a new cause of action against a motor vehicle owner for injuries arising out of a *non-owner's* negligent operation of the vehicle") (emphasis added). Also, because the liability statute is in derogation of the common law, it must be strictly construed. *Geib v Slater*, 320 Mich 316, 320; 31 NW2d 65 (1948), overruled in part by *Moore v Palmer*, 350 Mich 363; 86 NW2d 585 (1957). Therefore, even without regard to the immunity issues, the civil liability statute has no applicability here, because defendant was both the owner and the driver of the car. However, and more importantly, even if the facts were different (i.e. defendant was driving a car owned by another person), the provisions of the immunity statute must prevail over the provisions of the civil liability statute.

IV

HISTORICAL ANALYSIS

The history of both the civil liability statute and the governmental immunity act further suggests that the result reached by the majority is not appropriate. The liability statute (MCL 257.401[1]; MSA 9.2101[1]) was first enacted in 1909. The broad statutory governmental immunity provisions (MCL 691.1401 *et seq.*; MSA 3.996(101) *et seq.*) were codified in 1948. These provisions included a specific exception to immunity—the government can be held liable where injuries arise from the negligent use of a government-owned vehicle (MCL 691.1405; MSA 3.996[105]).

However, in 1986, when the *individual* immunity statute[1] was enacted, the statute did not similarly

---

[1] MCL 691.1407; MSA 3.996(107).

waive individual immunity from liability for negligently caused injuries arising from use of individuals' *own* vehicles. Rather, the Legislature maintained immunity for individual government employees notwithstanding that injuries might occur by way of automobile accidents. It is a well-known principle that the Legislature is presumed to be aware of, and thus to have considered the effect on, all existing statutes when enacting new laws. *Walen v Dep't of Corrections*, 443 Mich 240, 248; 505 NW2d 519 (1993). Therefore, we must proceed as though the Legislature enacted the *individual* immunity statute in 1986, with full knowledge of the well-recognized exception to governmental immunity for government-owned vehicles. It is quite implausible that the Legislature was unaware of such a significant exception, given that it is one of the five major exceptions to the governmental immunity statutes.[2] Certainly, we must recognize that Legislators have paid staff and volunteers who use their own cars to conduct government business. Therefore, it is highly implausible that this precise issue (immunity when automobiles are involved) would have escaped the attention of our legislators, when it is such a major part of governmental (as opposed to individual) immunity law. *Yet, in the 1986 amendments, the Legislature chose not to create an exception to immunity for individuals when they are driving their own vehicles in the scope of their government responsibilities.*

---

[2] See MCL 691.1402 *et seq.*; MSA 3.996(102) *et seq.* (defective highways), MCL 691.1405; MSA 3.996(105) (government-owned vehicles), MCL 691.1406; MSA 3.996(106) (public buildings), MCL 691.1413; MSA 3.996(113) (proprietary function exception), and MCL 691.1407(4); MSA 3.996(107)(4) (government hospitals).

Specific rules of construction concerning these two statutes also dictate that immunity should prevail here. The governmental immunity act is a very broad grant of immunity subject to a limited number of statutory exceptions. *Hickey v Zezulka (On Resubmission)*, 439 Mich 408, 421; 487 NW2d 106 (1992). *Ross* made clear that the statutory exceptions must be given a narrow reading. *Ross, supra* at 618; Baylor, Governmental Immunity In Michigan, § 2.4, p 2-8 (ICLE, 1991); *Hickey, supra* at 421. Accordingly, rather than reading (or rewriting) the statutory motor vehicle exception (for government-owned vehicles) broadly, it must be read narrowly. On the other hand, the liability statute is in derogation of the common law and is therefore to be strictly construed. *Geib, supra* at 320. This analysis further reinforces the conclusion that the governmental vehicle exception to immunity should not be broadened judicially to include individually owned vehicles.

Finally, for the judiciary to create another exception from the broad sweep of governmental immunity would improperly cast the judiciary in the role of the Legislature. *Lenawee Co Rd Comm v Dep't of Transportation*, 128 Mich App 528, 530; 340 NW2d 316 (1983). With regard to government-owned vehicles, the Legislature weighed the competing interests of (1) compensating victims of automobile-related torts and (2) protecting government from claims arising out of ordinary negligence, and struck a balance in favor of victim compensation. With regard to individual government employees with privately owned vehicles, it is apparent that the Legislature struck the balance in favor of protecting government workers. We should not assume that the Legislature was unaware of the

policy choices and implications of the two competing interests here when it considered precisely the same interests as they relate to the government itself. Having chosen to protect individuals with the cloak of immunity, the Legislature made a policy choice with which we may disagree, but which we are not free to undo.