**CHURCH MUTUAL INSURANCE COMPANY, Plaintiff,**

v.

**SAVE–A–BUCK CAR RENTAL COMPANY, INC., a Michigan corporation, Defendant.**

No. 199–CV–52.

United States District Court, W.D. Michigan, Southern Division.

Aug. 4, 2000.

Mary C. Rentz, Milind Parekh, Plunkett & Cooney, PC, Detroit, MI, for plaintiff.

Raymond W. Morganti, Siemion, Huckabay, Bodary, Padilla et al., Southfield, for defendant.

## OPINION AND ORDER ON THE PARTIES' REQUESTS FOR JUDGMENT

MILES, Senior District Judge.

In this diversity action, plaintiff Church Mutual Insurance Company ("Church") seeks a declaratory judgment (1) that defendant Save–A–Buck Car Rental Company, Inc. ("Save-a–Buck"), as owner/lessor of a rented automobile, is primarily responsible under Michigan law for providing defense and coverage to the driver of the vehicle on tort claims asserted against her arising from a June, 1997 motor vehicle accident; (2) that Save-a–Buck has unlimited liability for personal injury claims as a consequence of the accident; and (3) that any coverage provided by Church, which insured the driver's employer, is excess over that to be provided by Save-a–Buck.

The matter is now before the court on cross-"Requests for Judgment" filed by each of the parties.[1] The parties have also submitted a Stipulation of Facts and stipulated Joint Exhibits. The matter is now ready for decision.

### STIPULATED FACTS

On June 19, 1997, Carol Goodwin rented a 1988 Dodge automobile from defendant Save–A–Buck. While operating the rented vehicle on or about June 20, 1997, Goodwin was involved in a motor vehicle accident in the State of Ohio. Several passengers riding with Goodwin in the rented vehicle were injured. A number of the injured have asserted claims against Goodwin, her employer, Zion Lutheran Church ("Zion"), and Save–A–Buck.

On the date of the accident, a multi-peril policy of insurance (hereinafter "the Church policy") was in effect between plaintiff Church and Goodwin's employer Zion. The Church policy contains provisions which address insurance coverage for hired and non-owned automobiles. Among these provisions are the following:

> b. This insurance applies to 'bodily injury' and 'property damage' only if:
> . . .

---

1. The parties have agreed that trial is not necessary to resolve the issues presented by the action. Order Setting Briefing Schedule (docket no. 30).

(3) The 'bodily injury' or 'property damage' arises out of the maintenance or use of an automobile that is a 'hired automobile' or 'non-owned automobile.'

The term "hired automobile" is defined in the Church policy as

Any 'automobile':

a. Loaned to you;

b. Leased or rented by you or your employee;

c. Used under contract by you; or

d. Used in your behalf;

in the course of your business.

The Church policy also contains the following provision:

2. Exclusions.

This insurance does not apply to:

a. (1) With respect to any 'hired automobile':

(a) To the owner of the 'hired automobile';

(b) To the lessee (of whom the Named Insured is a sublessee) of a 'hired automobile'; or

(c) To any agent or employee of such owner or lessee other than the Named Insured.

The Church policy also contains "Conditions." A "condition" addressing "other insurance," provides in pertinent part as follows:

a. If other valid and collectible insurance is available to the insured for a loss we cover under this Coverage Part, our obligations are limited as follows:

(1) This insurance is excess over any of the other insurance, whether primary, excess, contingent or on any other basis. We will have no duty under this Coverage Part to defend any claim or 'suit' that any other insurer has a duty to defend. If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

(2) We will pay only our share of the amount of loss, if any, that exceeds the sum of:

(a) The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

(b) The total of all deductible and self-insured amounts under all that other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations Page of this Coverage Part.

The policy defines an "insured" as follows:

a. You are an insured.

b. Any of your officers, clergy or employees are insureds, but only with respect to their duties as such.

c. Any person while using a hired automobile is an insured (except while using an automobile owned by such person) provided the actual use of the automobile is with your permission.

The rental agreement issued by Save-A-Buck to Goodwin contains the following provision:

10. *THIRD PARTY LIABILITY PROTECTION.* In the event that coverage is imposed, by operation of law for the benefit of any person other than Renter, then limits of such coverage shall be equal to the minimum financial responsibility limits established by the Financial Responsibility Law or other

applicable statute of the state or other jurisdiction in which accident occurred. Renter and Additional Renters hereby indemnify and hold Daily Rental Company, its agents and employees harmless from and against all loss, liability and expense whatsoever in excess of limits of liability provided for herein, as a result of bodily injury, death or property damage caused by, or arising from use or operation of vehicle....

Save-A-Buck purchased a Commercial Excess Liability (or "Big Shield") Policy from the Royal Indemnity Company which provides coverage limits of up to $1,040,000 (including primary coverage of $20,000 per person and $40,000 per accident, as well as excess coverage of $1,000,000). The Royal Indemnity Company is not a party to this action.

## DISCUSSION

In its Brief in Support of Request for Judgment, plaintiff Church offers the following "Statement of Issue":

IS SAVE-A-BUCK RESPONSIBLE UP TO ITS POLICY LIMITS OF $1,040,000 IN THE UNDERLYING CASE?

Church seeks a determination, in the form of declaratory relief, that Save-A-Buck "is responsible for the defense and coverage for [Goodwin] in the underlying cases and that Save-A-Buck has unlimited liability for those accidents as well as a determination that [Church's] insurance is excess over Save-A-Buck." Church concludes by requesting, as relief, "a finding that its policy is excess over and above the coverage available to Save-A-Buck."

Save-A-Buck, in its Brief in Support, offers the following "Statement of Issue":

DID SAVE-A-BUCK HAVE AN OBLIGATION TO PURCHASE INSURANCE COVERING CAROL GOODWIN FOR LIABILITY IN EXCESS OF THE MINIMUM STATUTORY LIMITS REQUIRED BY M.C.L.A. § 257.520?

Save-A-Buck concludes its brief by requesting that the court enter judgment in its favor "by ruling that Save-A-Buck had no duty to provide liability insurance to Carol Goodwin in excess of $20,000 for injury to one person and $40,000 for injury to two or more persons in any one accident (as provided in Michigan's Financial Responsibility Act)."

Michigan's owner's liability statute, M.C.L. § 257.401, provides as follows:

(1) This section shall not be construed to limit the right of a person to bring a civil action for damages for injuries to either person or property resulting from a violation of * * * this act by the owner or operator of a motor vehicle or his or her agent or servant. The owner of a motor vehicle is liable for an injury caused by the negligent operation of the motor vehicle whether the negligence consists of a violation of a statute of this state or the ordinary care standard required by common law. The owner is not liable unless the motor vehicle is being driven with his or her express or implied consent or knowledge. It is presumed that the motor vehicle is being driven with the knowledge and consent of the owner if it is driven at the time of the injury by his or her spouse, father, mother, brother, sister, son, daughter, or other immediate member of the family.

*   *   *   *   *   *

(3) Notwithstanding subsection (1), a person engaged in the business of leasing motor vehicles who is the lessor of a motor vehicle under a lease providing for the use of the motor vehicle by the lessee for a period of 30 days or less is liable for an injury caused by the negli-

gent operation of the leased motor vehicle only if the injury occurred while the leased motor vehicle was being operated by an authorized driver under the lease agreement or by the lessee's spouse, father, mother, brother, sister, son, daughter, or other immediate family member. Unless the lessor, or his or her agent, was negligent in the leasing of the motor vehicle, the lessor's liability under this subsection is limited to $20,000.00 because of bodily injury to or death of 1 person in any 1 accident and $40,000.00 because of bodily injury to or death of 2 or more persons in any 1 accident.

(4) A person engaged in the business of leasing motor vehicles as provided under subsection (3) shall notify a lessee that the lessor is liable only up to the maximum amounts provided for in subsection (3), and only if the leased motor vehicle was being operated by the lessee or other authorized driver or by the lessee's spouse, father, mother, brother, sister, son, daughter, or other immediate family member, and that the lessee may be liable to the lessor up to amounts provided for in subsection (3), and to an injured person for amounts awarded in excess of the maximum amounts provided for in subsection (3).

(5) Subsections (3) and (4) shall not be construed to expand or reduce, except as otherwise provided by this act, the liability of a person engaged in the business of leasing motor vehicles or to impair that person's right to indemnity or contribution, or both.

(6) As used in subsections (3), (4), and (5), 'motor vehicle' means a self-propelled device by which a person or property may be transported upon a public highway. Motor vehicle does not include a bus, power shovel, road machinery, agricultural machinery, or other machinery or vehicle not designed primarily for highway transportation. Motor vehicle also does not include a device that moves upon or is guided by a track.

The purpose of § 257.401 "is to place the risk of damage or injury upon the person who has the ultimate control of the vehicle." *Roberts v. Posey*, 386 Mich. 656, 194 N.W.2d 310, 312 (1972):

As the court observed in *Roberts*,

The owner who gives his keys to another, and permits that person to move several thousand pounds of steel upon the public highway, has begun the chain of events which leads to damage or injury.

The statute makes the owner liable, not because he caused the injury, but because he permitted the driver to be in a position to cause the injury.

194 N.W.2d at 312.

Section 257.401 "was passed in response to an overwhelming public need," creating "a new cause of action against a motor vehicle owner for injuries arising out of a nonowner's negligent operation of the vehicle." *North v. Kolomyjec*, 199 Mich.App. 724, 502 N.W.2d 765, 766 (1993). "To subject an owner to liability under [§ 257.401], an injured person need only prove that the defendant is the owner of the vehicle and that it was being operated with the defendant's knowledge or consent." *Id.*, 502 N.W.2d at 767. The statute was designed to extend and complement the common law, whose principles, such as respondeat superior, were deemed "unable to cope with the rising tide of injuries resulting from the use of the new mechanism, the automobile." *Haberl v. Rose*, 225 Mich.App. 254, 570 N.W.2d 664, 666 (1997). Consistent with its purpose, which is "to place the risk of damage or injury on the owner, the person who has ultimate control of the vehicle, as well as on the person who is in immediate con-

trol," *id.* (citation omitted), *see also Poch v. Anderson,* 229 Mich.App. 40, 580 N.W.2d 456, 462 (1998); *Ball v. Chrysler Corp.,* 225 Mich.App. 284, 570 N.W.2d 481, 482 (1997), "[t]he public policy underlying the statute is to ensure financial responsibility for those injured as a result of negligent operation of motor vehicles." *Haberl,* 570 N.W.2d at 666 (citation omitted).

In support of its position that Save–A–Buck is responsible up to its policy limits for the permissive use of its rental car, notwithstanding § 257.401(3), Church cites *State Farm Mutual Automobile Ins. Co. v. Enterprise Leasing Co.,* 452 Mich. 25, 549 N.W.2d 345 (1996). In that case, the Michigan Supreme Court held that vehicle owners, including car rental companies, are required to provide primary coverage for their vehicles and all permissive users of their vehicles. *Id.,* 549 N.W.2d at 347. Church principally relies on the following language in the case:

> [T]he car rental companies and their insurers are required to provide primary residual liability coverage for the permissive use of the rental cars, *up to their policy limits or the minimum required by statute.*

*State Farm Mut. Auto. Ins. v. Enterprise Leasing,* 549 N.W.2d at 350 (emphasis supplied).

The problem with Church's reliance on *State Farm v. Enterprise Leasing,* however, is that the case was not interpreting the statutory language at issue here, which was added by the Michigan legislature effective June 22, 1995. *Black v. Panian Chevrolet,* 239 Mich.App. 227, 608 N.W.2d 89, 92 (2000); *see also Ryder Truck Rental, Inc. v. Auto–Owners Ins. Co., Inc.,* 235 Mich.App. 411, 597 N.W.2d 560, 561 (1999) ("We first note that in June 1995, the Legislature amended the owner's liability statute to provide for a $20,000 for each person and $40,000 for each accident limit

on a lessor's liability for negligent acts of a lessee during a rental period of thirty days or less"); *Liberty Mutual Ins. Co. v. Citizens Ins. Co.,* 990 F.Supp. 518, 522 n. 3 (1997) (Michigan Legislature amended § 257.401 effective June 22, 1995 to limit the liability of the owners of leased vehicles).

■ Church also relies on the notice provision contained in § 257.401(4), which requires a lessor to notify the lessee of, among other things, the maximum liability amounts specified in § 257.401(3). Because Save–A–Buck did not provide Goodwin with a notice which satisfies the requirements of § 257.401(4), Church contends, the limits on lessor liability do not apply in this instance.

The problem with this argument, however, is that it is not supported by the language of § 257.401. Subsection (4) simply does not contain the "unless" or "only if" language which Church reads into it. While § 257.401(4) clearly imposes a notice requirement, it does not impose a penalty for failure to give the required notice. In addition, § 257.401(5) seems to indicate that Michigan's legislature intended to impose no consequences at all for failure to comply with subsection (4)'s notice provision. Subsection (5)'s language, which expressly provides that subsection (4) "shall not be construed to expand or reduce, except as otherwise provided by this act, the liability of a person engaged in the business of leasing motor vehicles or to impair that person's right to indemnity or contribution, or both," is relatively clear in indicating that the lessor's liability vis-à-vis the lessee—if any—remains what it was or is under common law.

Church points out that § 257.401(3) provides that the lessor's liability is limited "[u]nless the lessor, or his or her agent, was negligent in the leasing of the motor

vehicle[.]" Church further argues that Save–A–Buck must be presumed "negligent in the leasing" of the vehicle because it violated the law by failing to comply with the notice ·mandate contained in § 257.401(4). However, § 257.401(5) if fatal to this argument, for it expressly provides that subsections (3) and (4) "shall not be construed to expand or reduce, except as otherwise provided by this act, the liability of a person engaged in the business of leasing motor vehicles[.]" Given this language, "negligent in the leasing" cannot possibly refer to the failure to comply with subsection (4); instead, it must refer to actions which would have made the lessor liable under common law, such as negligent entrustment (i.e., leasing the vehicle to a plainly incompetent or unqualified driver) or negligence in failing to provide the lessee with a reasonably safe vehicle.

Moreover, the language of subsection (3) itself—the limitation on lessor liability—gives some clue to the meaning of the statute. Subsection (3) expressly refers to the lessor's liability for "an injury caused by the *negligent operation* of the leased motor vehicle[.]" Michigan's Vehicle Code defines an "operator" as "every person, other than a chauffeur, who is in actual physical control of a motor vehicle upon a highway." M.C.L. § 257.36. Section 257.401(3) therefore contemplates a limitation on the lessor's liability for the actions of a negligent driver. By the same token, however, § 257.401(3) cannot be read as placing a limitation on the lessor's liability for its own negligence, as defined at common law.

▮ A review of the complaints in the underlying legal actions indicates that they allege both types of claims against Save–A–Buck: those which are based on Goodwin's negligence, and those which are based on Save–A–Buck's own alleged negligence in the rental of the vehicle in question.[2] These underlying complaints allege that the claimants were injured in what appears to have been a rollover accident, which occurred after a "blowout" of one of the vehicle's tires. *See* Yuhas Complaint, ¶ 9; Schroeder Complaint, ¶ 9; Rayner Complaint, ¶ 17; Bramel Complaint, ¶ 18. The complaints all allege that Goodwin operated the vehicle in a negligent manner, for example, by failing to drive at a safe speed, or by failing to stop and examine what some of the plaintiffs contend was a "noisy" tire. Yuhas Complaint, ¶ 14; Schroeder Complaint, ¶ 14; Rayner Complaint, ¶ 19; Bramel Complaint, ¶ 20. All of the complaints further allege that Save–A–Buck is liable for Goodwin's negligent acts. Yuhas Complaint, ¶ 20; Schroeder Complaint, ¶ 20; Rayner Complaint, ¶ 39; Bramel Complaint, ¶ 38. It is these allegations to which the limitation on liability contained in § 257.401(3) applies.

▮ However, all of the complaints also allege that Save–A–Buck itself was negligent, for example, by (1) renting out or leasing a vehicle that was not roadworthy, (2) failing to inspect, or negligently inspecting, the vehicle's tires, and (3) negligently installing an unsafe tire. Yuhas Complaint, ¶ 22; Schroeder Complaint, ¶ 22; Rayner Complaint, ¶s 40–41; Bramel Complaint, ¶s 39–40. It is these allegations to which the limitation on liability contained in § 257.401(3) *does not* apply.

▮ Now, to revisit the issues as stated by the parties. Church's statement of the

---

**2.** Joint Exhibit 7 contains the complaints in the underlying actions, which are as follows: *Yuhas v. Goodwin, et al.,* No. D–99–0386–NI (Kalamazoo County Circuit Court); *Schroeder v. Goodwin, et al.,* No. B–99–0385–NI (Kala-

mazoo County Circuit Court); *Rayner v. Louallen, et al.,* No. A–99–0387–NI (Kalamazoo County Circuit Court); and *Bramel v. Louallen, et al.,* No. A–99–0384–NI (Kalamazoo County Circuit Court).

issue is—"Is Save–A–Buck responsible up to its policy limits of $1,040,000 in the underlying case?" Consistent with the analysis above, the court's answer to this question is *yes*—but only to the extent that Save–A–Buck itself is found to have been negligent in a manner which caused the accident to happen.

■ Save–A–Buck's statement of the issue is—"Did Save–A–Buck have an obligation to purchase insurance covering Carol Goodwin for liability in excess of the minimum statutory limits required by MCLA § 257.520?" Section 257.520, which applies to motor vehicle liability policies, requires an owner's policy of liability insurance to, among other things,

> insure the person named therein and any other person, as insured, using any such motor vehicle ... with the express or implied permission of such named insured, against loss from the liability imposed by law for damages arising out of the ownership, maintenance or use of such motor vehicle or motor vehicles ... as follows: $20,000.00 because of bodily injury to or death of 1 person in any 1 accident and, subject to said limit for 1 person, $40,000.00 because of bodily injury or death of 2 or more persons in any accident[.]

§ 257.520(b)(2). Consistent with the analysis above, and with the express language of § 257.520, the answer to the question framed by Save–A–Buck is *no*—Save–A–Buck's responsibility for Goodwin's negligent operation of the vehicle is limited to the statutory amounts. Although, as the vehicle owner, Save–A–Buck was legally required to purchase liability coverage for Goodwin up to the statutory minimum of $20,000/$40,000, it had no obligation under Michigan law to provide Goodwin with insurance coverage in excess of these statutory limits.

■ Church's final plea for relief is a request that the court declare that its policy coverage is excess over Save–A–Buck's liability policy coverage. For the reasons stated above, the best that the court can do for Church is to rule that Save–A–Buck has a duty to provide liability insurance to Carol Goodwin only up to $20,000 per person and $40,000 per accident. Any coverage which Save–A–Buck has in excess of those amounts does not cover Goodwin for her operation of the rental vehicle. Save–A–Buck's excess coverage is therefore not "valid and collectible insurance ... available to the insured" as defined by the Church policy's "Other Insurance" clause.

The court will enter judgment accordingly.

## JUDGMENT

In accordance with the Opinion dated August 4, 2000, the court hereby declares that defendant Save–A–Buck Car Rental Company, Inc. has a duty to provide liability insurance to plaintiff Church Mutual Insurance Company's insured, Carol Goodwin, in connection with claims arising out of the motor vehicle accident which occurred on or about June 20, 1997, in an amount not greater than $20,000 because of bodily injury of one person, and, subject to this $20,000 limit for one person, in an amount not greater than $40,000 because of bodily injury of two or more persons.

All additional requests for declaratory relief are hereby dismissed.