*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
ELECTRONIC CITATION: 2001 FED App. 0144P (6th Cir.)
File Name: 01a0144p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

ALLSTATE INSURANCE
COMPANY; AMERICAN
EXPRESS, Property and
Casualty Companies,
       *Plaintiffs-Appellees,*

       *v.*

THRIFTY RENT-A-CAR
SYSTEMS, INC., an Oklahoma
Corporation,
       *Defendant-Appellant,*

ASAD ABBAS; SYED RISVI,
       *Defendants-Appellees,*

DORIS LOVELAND,
       *Appellee.*

No. 99-1882

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 97-75917—John Corbett O'Meara, District Judge.

Argued: March 15, 2001

Decided and Filed: May 3, 2001

Before:  COLE and GILMAN, Circuit Judges; ALDRICH, District Judge.[*]

_____

**COUNSEL**

**ARGUED:**  Raymond W. Morganti, Southfield, Michigan, for Appellant.  Richard B. Poling, Jr., POLING, MCGAW & POLING, Troy, Michigan, for Appellees.  **ON BRIEF:** Raymond W. Morganti, Southfield, Michigan, for Appellant. Richard B. Poling, Jr., POLING, MCGAW & POLING, Troy, Michigan, for Appellees.

_____

**OPINION**

_____

R. GUY COLE, JR., Circuit Judge.  Defendant-Appellant Thrifty Rent-A-Car Systems, Inc. ("Thrifty") appeals the district court's grant of summary judgment to Plaintiff-Appellee American Express Property and Casualty Companies ("AmEx") in this declaratory judgment action brought to determine which insurance company or companies should pay for injuries sustained in an accident involving a minivan rented from Thrifty.  For the reasons that follow, we **REVERSE** the judgment of the district court and **REMAND** the case for entry of summary judgment in favor of Thrifty.

**I.  BACKGROUND**

On August 8, 1997, Defendant-Appellee Syed Risvi entered into a contract to rent a 1997 Plymouth Voyager from Thrifty at its Southfield, Michigan, location.  Defendant-Appellee Asad Abbas was named as an additional driver on the rental

AmEx does have standing, however,  to seek a declaration regarding Thrifty's duty to provide liability insurance coverage to Abbas for third-party claims arising out of the August 9, 1997, accident.  It is undisputed that (1) Abbas's insurance contract with AmEx provides only *excess* coverage for vehicles not owned by Abbas; and (2) Thrifty, as owner of the minivan, must provide primary insurance coverage for liability arising out of the accident, *see State Farm Mut. Auto. Ins. Co.*, 549 N.W.2d at 349.  However, Thrifty's statutory duty to provide insurance coverage extends only to the $20,000 and/or $40,000 minimum amounts required by M.C.L.A. §§ 357.520 and 500.3009.  *See Ryder Rental Truck, Inc.*, 597 N.W.2d at 561.  Thrifty concedes that it must insure Abbas up to these statutorily required minimum coverage limits, but argues that it is not required to provide coverage to Abbas beyond those limits.  In light of the Michigan Court of Appeal's holding in *Ryder Rental Truck*, *see id.*, we agree, as does at least one other federal district court, *see Church Mutual Ins. Co.*, 2000 U.S. Dist. LEXIS 11702, at *18 ("Although, as the vehicle owner, [the rental company] was legally required to purchase liability coverage for [the lessee] up to the statutory minimum of $20,000/$40,000, it had no obligation under Michigan law to provide [the lessee] with insurance coverage in excess of these statutory limits."). Accordingly, we find that the district court erred in granting AmEx's motion for summary judgment.

**III.  CONCLUSION**

For the foregoing reasons, we **REVERSE** the judgment of the district court and **REMAND** the case for entry of summary judgment in favor of Thrifty.

---

[*] The Honorable Ann Aldrich, United States District Judge for the Northern District of Ohio, sitting by designation.

than any other action. *See Adult Video Ass'n*, 71 F.3d at 565-66.

We find that AmEx has the constitutional standing to bring its declaratory judgment action in federal court. Ostensibly, AmEx urges us to accept an incorrect statutory construction, which, if it were correct, would save AmEx money. If Cunningham had sued Abbas, and Abbas had impleaded AmEx, AmEx would have asserted the same erroneous statutory construction as a third-party defendant that it now asserts as a plaintiff. As the Supreme Court held in the leading case regarding the constitutionality of the Declaratory Judgment Act, "If the insured had brought suit to recover [from the insurer] there would have been no question that the controversy was justiciable in nature . . . . [T]he character of the controversy and of the issue to be determined is essentially the same whether it is presented by the insured or by the insurer." *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 243-44 (1937). Thus, AmEx has alleged the requisite injury-in-fact to establish a case or controversy under Article III.

AmEx, however, does not satisfy our prudential standing requirements regarding the effect of M.C.L.A. § 257.401. As previously discussed, M.C.L.A. § 257.401 does not speak to Thrifty's duty to provide insurance coverage to Abbas, but rather deals only with Thrifty's vicarious tort liability to claimants injured as a result of the accident involving Thrifty's minivan. Thus, AmEx's claim for relief under M.C.L.A. § 257.401 appears to rest on the legal rights or interests of third parties. *See Coyne*, 183 F.3d at 494. Moreover, we have held in a similar context that prudential limitations on our jurisdiction counsel against allowing two insurers (here, AmEx and Thrifty) to litigate their respective duties to insure their joint insured in a vacuum. *See Allstate Ins. Co. v. Wayne County*, 760 F.2d 689, 696 (6th Cir. 1985). Accordingly, we find that, under our prudential standing rules, AmEx lacks standing to litigate the effect of M.C.L.A. § 257.401(3) on Thrifty's tort liability.

agreement. Risvi and Abbas used the minivan to take a number of people to a wedding in Texas. The next day at approximately 1:00 a.m., Abbas was driving westbound on I-70 in Cumberland County, Illinois, when he lost control of the vehicle, crossed the center median, and struck a 1992 Ford Explorer traveling eastbound. Syed Jaffery, Sr., a passenger in the minivan, and Ardel Cunningham, the driver of the Ford Explorer, were killed in the crash; others sustained serious, but not fatal, injuries.

At the time of the accident, Plaintiff-Appellant Allstate Insurance Company ("Allstate") insured Risvi's personal vehicles, and AmEx insured Abbas's personal vehicles. Abbas's insurance policy with AmEx specifically stated that it provided excess coverage for vehicles not owned by Abbas. The policy read: "Insurance afforded under this part for a vehicle you do not own, is excess over any other collectible auto liability insurance."

Allstate and AmEx filed the instant declaratory judgment action in the United States District Court for the Eastern District of Michigan on December 2, 1997, seeking, *inter alia*: (1) a declaration that Thrifty, as owner of the minivan, owes primary insurance coverage to Abbas; (2) a declaration that the insurance coverage Thrifty owes to Abbas is unlimited in amount; and, (3) a declaration that Thrifty has a duty to defend Abbas with respect to personal injury claims arising out of the accident. Jurisdiction was based on complete diversity of citizenship. The parties filed cross-motions for summary judgment and presented oral arguments to the district court on April 30, 1999. In a written opinion and order issued May 6, 1999, the district court granted Allstate's and AmEx's motions, but denied Thrifty's motion.[1] Thrifty moved for re-hearing on May 17, 1999, which motion the district court denied in an order issued June 29, 1999.

---

[1] Thrifty does not appeal the district court's opinion and order as to Allstate; thus, Allstate is not a party to this appeal.

On appeal, Thrifty argues that: (1) the district court erred in ruling that Thrifty had a duty to provide unlimited insurance coverage to Abbas under Michigan law; and (2) AmEx lacked standing to seek the declaratory relief granted by the district court in this case.

## II. DISCUSSION

We review *de novo* the district court's grant of summary judgment. *See Prestige Cas. Co. v. Mich. Mut. Ins. Co.*, 99 F.3d 1340, 1348 (6th Cir. 1996). Summary judgment is appropriate where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* FED. R. CIV. P. 56(c); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In diversity cases such as this, we apply state law in accordance with the controlling decisions of the state supreme court.[2] *See Prestige Cas. Co.*, 99 F.3d at 1348 (applying Michigan law). If the state supreme court has not yet addressed the issue presented, we must predict how the court would rule by looking to all the available data. *See id.* "Relevant data include decisions of the state appellate courts, and those decisions should not be disregarded unless we are presented with persuasive data that the Michigan Supreme Court would decide otherwise." *Kingsley Assoc. v. Moll PlastiCrafters, Inc.*, 65 F.3d 498, 507 (6th Cir. 1995).

### A. Duty to Provide Insurance Coverage vs. Vicarious Tort Liability

Thrifty first contends that the district court confused the issue of Thrifty's duty to provide insurance coverage under Michigan's no-fault insurance statute with the issue of Thrifty's vicarious tort liability under Michigan's owner's liability statute.

---

[2]On appeal, the parties do not dispute the district court's conclusion that the law of Michigan, rather than that of Illinois, applies to this case.

### B. AmEx's Standing to Sue

Thrifty next argues that AmEx lacks standing to seek the declaratory relief granted by the district court. Specifically, Thrifty contends that AmEx lacked standing to litigate the effect of M.C.L.A. § 257.401(3) on Thrifty's tort liability because AmEx does not have a personal stake in Thrifty's liability to tort claimants.

The United States Supreme Court has stated that standing is "the threshold question in every federal case." *Warth v. Seldin*, 422 U.S. 490, 498 (1975). Moreover, any inquiry into a litigant's standing to sue involves examination of both constitutional limitations and prudential restrictions. *Id*. As we recently explained:

> To satisfy Article III's standing requirement, a plaintiff must have suffered some actual or threatened injury due to the alleged illegal conduct of the defendant; the injury must be "fairly traceable" to the challenged action; and there must be a substantial likelihood that the relief requested will redress or prevent the plaintiff's injury. . . . In addition to the constitutional requirements, a plaintiff must also satisfy three prudential standing restrictions. First, a plaintiff must "assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interest of third parties." Second, a plaintiff's claim must be more than a "generalized grievance" that is pervasively shared by a large class of citizens. Third, in statutory cases, the plaintiff's claim must fall within the "zone of interests" regulated by the statute in question.

*Coyne v. American Tobacco Co.*, 183 F.3d 488, 494 (6th Cir. 1999) (citations omitted). In order to have standing to litigate an issue in federal court, therefore, the plaintiff must demonstrate a personal stake in the resolution of the controversy. *See Baker v. Carr*, 369 U.S. 186, 204 (1962). In this regard, declaratory judgment actions are no different

coverage is unlimited and that Thrifty has a duty to defend Abbas, its holding was in error.

Moreover, Thrifty argues persuasively that the district court misconstrued the phrase "negligent in the leasing of a motor vehicle" as used in § 257.401(3). Thrifty argues that the phrase was not meant to refer to a car rental company's conduct in drafting the terms of a rental contract, but rather was intended to refer to negligent conduct causally related to the tort victims' injuries, such as the "negligent entrustment" of an automobile to an unsafe driver. According to Thrifty, therefore, the company's failure to notify Risvi and Abbas of its limited liability in the rental contract did not amount to "negligence" within the meaning of § 257.401(3) because such failure did not contribute to the accident in question.

We believe that Thrifty's interpretation of § 257.401(3) is correct as a matter of Michigan law. *See Johnson v. Bobbie's Party Store*, 473 N.W.2d 796, 801 (Mich. App. 1991) ("[B]efore the violation of an ordinance, rule, or regulation may be considered as bearing on the question of negligence, the court must determine that the purpose of the ordinance was to prevent the type of injury and harm suffered."). Indeed, we are not alone in concluding that the phrase "negligent in leasing" as used in § 257.401(3) cannot possibly refer to the failure to comply with the notice requirements of § 257.401(4). *See Church Mut. Ins. Co. v. Save-A-Buck Rental Co., Inc.*, No. 1:99-cv-52, 2000 U.S. Dist. LEXIS 11702, at *13 (W.D. Mich. Aug. 4, 2000) (holding that "negligent in leasing" as used in § 257.401(3) "must refer to actions which would have made the lessor liable under common law, such as negligent entrustment . . . or negligence in failing to provide the lessee with a reasonably safe vehicle"). Thus, even if we were to agree with AmEx that the question of Thrifty's vicarious tort liability under § 257.401(3) is somehow relevant to this case, we would disagree with AmEx's -- and the district court's -- interpretation of that statute.

Michigan's no-fault insurance statute requires that motor vehicle owners maintain insurance coverage for liability arising out of the use of their vehicles. *See* MICH. COMP. LAWS ANN. § 500.3101(1) (West 2000). This requirement extends to car rental companies. *See State Farm Mut. Auto. Ins. Co. v. Enterprise Leasing Co.*, 549 N.W.2d 345, 349 (Mich. 1996) (holding that car rental companies must provide primary insurance coverage for liability arising out of the use of their vehicles, pursuant to M.C.L.A. § 500.3101). However, car rental companies are only required to provide insurance coverage equal to the statutory minimum coverage amounts prescribed by M.C.L.A. §§ 257.520 and 500.3009.[3] *See Ryder Rental Truck, Inc. v. Auto-Owners Ins. Co., Inc.*, 597 N.W.2d 560, 561 (Mich. App. 1999) ("As long as the owner provides the primary insurance coverage with a policy limit equal to or above the minimum amounts required by M.C.L.A. § 500.3009(1), . . . there is no violation of law. . . ."). These sections provide for minimum statutory coverage limits of $20,000 for bodily injury to or death of one person in any one accident, and $40,000 for bodily injury to or death of two or more persons in any one accident. *See* M.C.L.A. §§ 257.520(b)(2); 500.3009(1).

A car rental company's liability in tort for loss caused by a lessee-driver is set out in Michigan's owner's liability statute, M.C.L.A. § 257.401. The Michigan legislature enacted § 257.401 in 1949 to create a cause of action, unknown at common law, against owners of motor vehicles arising from the negligent operation of those vehicles by authorized users. *See Travelers Ins. v. U-Haul of Mich.*, 597 N.W.2d 235, 237 (Mich. App. 1999). The purpose of the statute is to place the risk of damage or injury on the vehicle owner, who has ultimate control over the vehicle. *See id.* at 240. In 1995, the legislature amended § 257.401 to limit car rental companies'

---

[3] M.C.L.A. § 257.520 is part of Michigan's motor vehicle code governing motor vehicle liability policies. M.C.L.A. § 500.3009 is part of Michigan's insurance code governing casualty insurance contracts for motor vehicle liability.

liability under the statute. Subsection (3) of the amended statute provides:

> (3) Notwithstanding subsection (1), a person engaged in the business of leasing motor vehicles who is the lessor of a motor vehicle under a lease providing for the use of the motor vehicle by the lessee for a period of 30 days or less is liable for an injury caused by the negligent operation of the leased motor vehicle only if the injury occurred while the leased motor vehicle was being operated by an authorized driver under the lease agreement or by the lessee's spouse, father, mother, brother, sister, son, daughter, or other immediate family member. Unless the lessor, or his or her agent, was negligent in the leasing of the motor vehicle, the lessor's liability under this subsection is limited to $20,000.00 because of bodily injury to or death of 1 person in any 1 accident and $40,000.00 because of bodily injury to or death of 2 or more persons in any 1 accident.

M.C.L.A. § 257.401(3). Subsection (4) of the statute requires that car rental companies notify lessees of these limits, and inform lessees that they may be liable for amounts in excess of these limits. *See* M.C.L.A. § 257.401(4).[4]

The district court first found that Thrifty had a duty to provide primary insurance coverage for its rental vehicles

---

[4]M.C.L.A. § 257.401(4) provides:

A person engaged in the business of leasing motor vehicles as provided under subsection (3) shall notify a lessee that the lessor is liable only up to the maximum amounts provided for in subsection (3), and only if the leased motor vehicle was being operated by the lessee or other authorized driver or by the lessee's spouse, father, mother, brother, sister, son, daughter, or other immediate family member, and that the lessee may be liable to the lessor up to amounts provided for in subsection (3), and to an injured person for amounts awarded in excess of the maximum amounts provided for in subsection (3).

---

under Michigan's no-fault insurance statute, M.C.L.A. § 500.3101(1). The district court then proceeded to analyze Thrifty's liability under Michigan's owner's liability statute, M.C.L.A. § 257.401. The court found that Thrifty had been "negligent in leasing" the minivan to Risvi and Abbas under M.C.L.A. § 257.401(3) because Thrifty had failed to notify Risvi and Abbas that its liability was limited to $20,000 and/or $40,000, as required under M.C.L.A. § 257.401(4). Accordingly, the district court found that Thrifty was not entitled to limit its liability under M.C.L.A. § 257.401(3), and consequently granted AmEx's motion for summary judgment.

We find that the district court erroneously conflated Thrifty's duty to provide insurance coverage under Michigan's no-fault insurance statute with Thrifty's vicarious tort liability under Michigan's owner's liability statute. The district court was correct in finding that, as the owner of the minivan, Thrifty had a duty to provide primary insurance coverage for liability arising out of the use of the minivan. *See State Farm Auto Ins. Co.*, 549 N.W.2d at 349. However, Thrifty was only required to provide such primary insurance coverage up to the $20,000/$40,000 statutory minimum coverage limits established in M.C.L.A. §§ 257.520 and 500.3009. *See Ryder Rental Truck, Inc.*, 597 N.W.2d at 561. The issue of Thrifty's vicarious tort liability as owner of the minivan under M.C.L.A. § 257.401 is unrelated to its duty to provide insurance coverage under M.C.L.A. § 500.3101. Section 257.401(3) creates a ceiling on car rental companies' tort liability arising out of their customers' negligent operation of their vehicles. Sections 257.520 and 500.3009, by comparison, create a floor on the amount of insurance coverage car rental companies must provide for their vehicles. While the maximum liability limits set out in § 257.401(3) are the same as the minimum insurance coverage limits set out in §§ 257.520 and 500.3009 (*i.e.* $20,000 and/or $40,000), these provisions do not address the same legal obligations. Thus, to the extent the district court relied on Michigan's owner's liability statute in holding that Thrifty's liability insurance