Per Curiam.
 

 This case is before us on rehearing. In our initial opinion,
 
 Backus v Fajnor-Strong,
 
 unpublished memorandum opinion of the Michigan Court of Appeals, issued June 4, 1999 (Docket No. 204620), we affirmed the trial court’s denial of defendant Melody A. Kauffman’s (hereinafter defendant) motion to amend her answer to include governmental immunity as an affirmative defense. We based that earlier decision on this Court’s decision in
 
 Haberl v Rose,
 
 225 Mich App 254; 570 NW2d 664 (1997). Defendant then filed a motion for rehearing, directing our attention to the Michigan Supreme Court’s subsequent decision in
 
 Alex v Wildfong,
 
 460 Mich 10; 594 NW2d 469 (1999). We now vacate our previous opinion, reverse the trial court’s denial of defendant’s motion to amend, and remand.
 

 This case originates out of an automobile accident that occurred during the early morning hours of January 9, 1996. At that time, defendant was working full-time as a French teacher for the Lansing School District. During the course of the 1995-96 school year, defendant would begin each regular school day by teaching an eighth grade class at Pattengill Middle School. Defendant would then drive in her own car to Moores Park Elementary School, where she spent the rest of the day. Defendant was making her routine trip to Moores Elementary when the accident occurred. On May 27, 1997, defendant moved to amend her affirmative defenses to include governmental immunity. MCL 691.1407(2); MSA
 
 *405
 
 3.996(107)(2). After a hearing on the motion, the trial court denied defendant’s motion.
 

 Defendant argues that the trial court erred in denying her motion to amend her answer. We agree. We review a trial court’s decision regarding a motion to amend pleadings for an abuse of discretion.
 
 In re Dissolution of F Yeager Bridge & Culvert Co, 150
 
 Mich App 386, 397; 389 NW2d 99 (1986). MCL 691.1407(2); MSA 3.996(107)(2) states:
 

 Except as otherwise provided in this section, and without regard to the discretionary or ministerial nature of the conduct in question, each officer and employee of a governmental agency, each volunteer acting on behalf of a governmental agency, and each member of a board, council, commission, or statutorily created task force of a governmental agency shall be immune from tort liability for injuries to persons or damages to property caused by the officer, employee, or member while in the
 
 course of employment
 
 or service or volunteer while acting on behalf of a governmental agency if all of the following are met:
 

 (a) The officer, employee, member, or volunteer is acting or reasonably believes he or she is acting within the
 
 scope of his or her authority.
 

 (b) The governmental agency is engaged in the exercise or discharge of a governmental function.
 

 (c) The officer’s, employee’s, member’s, or volunteer’s conduct does not amount to gross negligence that is the proximate cause of the injury or damage. As used in this subdivision, “gross negligence” means conduct so reckless as to demonstrate a substantial lack of concern for whether an ir\jury results. [Emphasis added.]
 

 Resolution of this appeal turns on the meanings of the two italicized provisions.
 

 “The overriding goal guiding judicial interpretation of statutes is to discover and give effect to legislative intent.”
 
 Bio-Magnetic Resonance, Inc v Dep’t of Pub
 
 
 *406
 

 lic Health,
 
 234 Mich App 225, 229; 593 NW2d 641 (1999). “[J]udicial construction is appropriate when reasonable minds can differ with regard to the meaning of the statutory language.”
 
 Benedict v Dep’t of Treasury,
 
 236 Mich App 559, 563; 601 NW2d 151 (1999). Because the Legislature has not provided definitions for the two provisions, we believe reasonable minds can differ with regard to their meaning. We therefore turn to the rules of statutory construction for guidance.
 

 Both the Michigan Supreme Court and our Court often collapse the “course of employment” and the “scope of his or her authority” requirements of subsection 7(2) into a single general “scope of employment” requirement. For example, the defendant in
 
 Haberl v Rose
 
 was employed by the Coldwater Community Schools as the executive secretary to both the Superintendent of Schools and the Board of Education. As part of her duties, Ms. Rose prepared the school board agendas. Although not specifically requested or ordered to deliver the agendas, Ms. Rose decided to do so at the end of her regular work day. While driving in her own car to deliver the agendas, Ms. Rose negligently collided with another vehicle. Both the
 
 Haberl
 
 majority and dissent agreed that at the time of the accident, Ms. Rose was acting “within the scope of her employment.”
 
 Haberl, supra
 
 at 256, 268. This conclusion was echoed by the Michigan Supreme Court in
 
 Wildfong:
 
 “At the time of the accident, Ms. Rose was acting within the scope of her employment, her employer was engaged in a government function, and she was not grossly negligent.”
 
 Wildfong, supra
 
 at 16.
 

 
 *407
 
 This tendency is perhaps a result of the indefinite nature of the two requirements. It may also result from the jurisprudential symbiosis that exists between the doctrine of governmental immunity and traditional principles of common-law tort and agency law when the issue involves the actions of a governmental employee.
 
 [1]
 
 See
 
 Ross v Consumers Power Co (On Rehearing),
 
 420 Mich 567, 624, n 38; 363 NW2d 641 (1984).
 
 [2]
 
 This does not mean, however, that our courts have concluded that the “course of employment” and “scope of his or her authority” requirements are coextensive. Indeed, to regard the provisions as interchangeable would violate the rale against construing statutory provisions in a way that tends to render portions of the statute surplusage.
 
 Benedict, supra
 
 at 567.
 
 [3]
 
 Rather, we believe that courts often follow this singular approach when the question whether the two requirements have been satisfied is easily disposed of. In this case, we believe the matter is not so clear.
 

 The existence of an employment relationship lies at the core of the “course of employment” provision. See
 
 The American Heritage Dictionary of the English
 
 
 *408
 

 Language
 
 (1996), p 604;
 
 [4]
 
 2 Restatement Agency, 2d, § 228, comment a, p 504.
 
 [5]
 
 We believe that the provision also embraces the circumstances of the work environment created by that relationship, including the temporal and spatial boundaries established. See
 
 Appleford v Kimmel,
 
 297 Mich 8, 12; 296 NW2d 861 (1941); 2 Restatement Agency, 2d, §§ 228(1)(b), 233,
 

 234, pp 504, 516, 518;
 
 [6]
 
 Black’s Law Dictionary (7th ed), p 356.
 
 [7]
 
 Additionally, inherent in the provision is the notion that the act in question was undertaken in furtherance of the employer’s purpose. See
 
 Wilhelm v Angell, Wilhem & Shreve,
 
 252 Mich 648, 652; 234 NW 433 (1931); 2 Restatement Agency, 2d, §§ 228(1)(c), 235, pp 504, 520;
 
 [8]
 
 Black’s Law Dictionary (7th ed), p 356.
 

 We conclude that the record before us indicates that defendant was acting within the course of her
 
 *409
 
 employment at the time of the accident. Defendant was in the middle of her workday and traveling from one teaching assignment for the school district to another when the accident occurred. Further, there is nothing in the record to suggest that defendant was motivated by any purpose other than discharging her duties to the school district.
 

 The issue whether defendant was acting within the scope of her authority at the time is somewhat more complicated, however. The term “authority” is defined by Black’s Law Dictionary to include “the power delegated by a principal to an agent.” Black’s Law Dictionary (7th ed), p 127. “Scope of authority” is defined in the following manner: “The reasonable power that an agent has been delegated or might foreseeably be delegated in carrying out the principal’s business.”
 
 Id.
 
 at 1348.
 
 [9]
 
 At the time of the accident, defendant did not have a typical teaching position. In order to fulfill her responsibilities to the school district and her students, she had to shuttle each day between the two schools. In one sense, defendant was actually “authorized” by the school district to travel between the two schools. Indeed, defendant averred that she was compensated by the school district for both her time and miles traveled.
 
 [10]
 
 See
 
 Pappas v Sport Services, Inc,
 
 68 Mich App 423, 429; 243 NW2d 10 (1976).
 
 [11]
 
 In another
 
 *410
 
 sense, in the circumstances in which defendant found herself, this travel was essential, albeit incidental,
 
 [12]
 
 to the carrying out of her authority as a schoolteacher. See 2 Restatement Agency, 2d, § 229, comment a, pp 506-507.
 
 [13]
 

 Considered in the abstract, the act of driving does seem to be an entirely different kind of responsibility than normally would be assigned to a teacher. We are, however, not making abstract judgments in this matter. The scope of an employee’s authority must always be considered in the light of the particular circumstances of the employment. In defendant’s circumstances, the act of driving between the two schools fell within the scope of her authority because it was done in pursuance of satisfying her duties to the school district.
 
 [14]
 
 Therefore, because defendant’s amendment would not have been futile,
 
 McNees v Cedar Springs Stamping Co,
 
 184 Mich App 101, 103; 457 NW2d 68 (1990), we conclude that the trial court’s denial of her motion to amend was an abuse of discretion.
 

 
 *411
 
 Reversed and remanded. We do not jurisdiction. retain
 

 [1]
 

 We assume that the Legislature was aware of these principles when it drafted subsection 7(2). See
 
 Garwols v Bankers Trust Co,
 
 251 Mich 420, 424-425; 232 NW 239 (1930). Accordingly, we will rely on those principles for guidance in construing the two statutory provisions.
 

 [2]
 

 In their discussion of the doctrine of
 
 respondeat superior,
 
 Prosser and Keeton observe that a master’s vicarious liability for the torts of his servants “extends to any and all tortious conduct of the servant which is within the ‘scope of employment.’" Prosser & Keeton, Torts (5th ed), § 70, p 502. The phrase is also discussed at length in 2 Restatement Agency, 2d, §§ 219, 228-237.
 

 [3]
 

 The fact that the two provisions are located in two separate sections of subsection 7(2) also indicates that the Legislature intended them to be regarded and addressed separately.
 

 [4]
 

 “Employment” is defined by
 
 The American Heritage Dictionary
 
 as including: “The act of employing----The state of being employed____The work in which one is engaged; occupation.”
 

 [5]
 

 Comment a includes the following observation: “The word ‘employment’ means the subject matter as to which the master and servant relationship exists.”
 

 [6]
 

 Subsection 228(l)(b) reads: “Conduct of a servant is within the scope of employment if ... it occurs substantially within the authorized time and space limits . . . .” Section 233 states: “Conduct of a servant is within the scope of employment only dining a period which has a reasonable connection with the authorized period.” Finally, § 234 states: “Conduct is within the scope of employment only in the authorized area or in a locality not unreasonably distant from it.”
 

 [7]
 

 Black’s defines “course of employment” in the following manner: “Events that occur or circumstances that exist as a part of one’s employment; esp. the time during which an employee furthers an employer’s goals through employer-mandated directives.”
 

 [8]
 

 Subsection 228(lXc) reads: “Conduct of a servant is within the scope of employment if... it is actuated, at least in part, by a purpose to serve the master . . . .” Section 235 states: “An act of a servant is not within the scope of employment if it is done with no intention to perform it as a part or incident to a service on account of which he is employed.”
 

 [9]
 

 The definition given for “scope of employment” is as follows: “The range of reasonable and foreseeable activities that an employee engages in while carrying out the employer’s business.” Black’s Law Dictionary (7th ed), p 1348. Taken together, Black’s definitions of “scope of authority” and “scope of employment” recognize and stress the essential difference between the
 
 power
 
 delegated and the
 
 activities
 
 engaged in by an employee when carrying out the business of the employer.
 

 [10]
 

 This assertion has not been challenged by plaintiff.
 

 [11]
 

 The plaintiff in
 
 Pappas
 
 was appealing a denial by the Workmen’s Compensation Appeal Board of workmen’s compensation benefits.
 
 Pap-
 
 
 *410
 

 pas, supra
 
 at 424. In any event, we find the discussion cited helpful in our examination of the issue in the case before us. We are particularly impressed by the soundness of the following observation: “Where the employer . . . reimburses identifiable travel expenses, or provides an identifiable sum for travel time,
 
 it is probable that the employer has contracted for the employee’s travel and that... the travel itself is employment."
 
 (Emphasis added.)
 
 Id.
 
 at 429. We believe this reasoning is applicable to the case now before us.
 

 [12]
 

 “Incidental authority” is defined in the following manner: “Authority needed to carry out actual or apparent authority.” Black’s Law Dictionary (7th ed), p 128.
 

 [13]
 

 “[A] servant is authorized to do anything which is reasonably regarded as incidental to the work specifically directed or which is usually done in connection with such work.”
 

 [14]
 

 We also note that subsection 7(2) intentionally rejects the drawing of any lines between discretionary and ministerial activities.
 
 Jackson v Saginaw Co,
 
 458 Mich 141, 151-152, n 11; 580 NW2d 870 (1998).