NIEDERHOUSE v PALMERTON

Docket No. 310079. Submitted April 4, 2013, at Lansing. Decided April 23, 2013, at 9:05 a.m.

Conrad Niederhouse brought an action in the Roscommon Circuit Court against A. J. Palmerton (a Roscommon County deputy sheriff), Roscommon County, and Randall Stevenson (the county sheriff) after an airboat operated by Palmerton struck and injured him on a frozen lake during a winter festival. The Roscommon Sheriff's Department owned the airboat, and an on-duty sheriff's deputy had been giving rides to the public in it throughout the day as part of the festival. After that deputy had given his last ride at the end of the day, Palmerton, who was off duty, took his son, his mother, and two neighbor children out for a ride and injured Niederhouse while doing so. Defendants moved for summary disposition on the grounds of governmental immunity. The court, Thomas R. Evans, J., granted summary disposition in favor of each defendant. Niederhouse appealed, challenging only the grant of summary disposition to Palmerton and specifically limiting his appeal to whether Palmerton was acting in the course of his employment when the accident occurred.

The Court of Appeals *held*:

1. The governmental immunity act, MCL 691.1401 *et seq.*, generally provides immunity from tort claims to governmental agencies engaged in a governmental function, as well as governmental officers, agents, or employees. MCL 691.1407(2) provides in part that each officer and employee of a governmental agency is immune from tort liability for an injury to a person or damage to property caused by the officer or employee while in the course of employment if certain other requirements are met. The necessary considerations for a course of employment are (1) the existence of an employment relationship, (2) the circumstances of the work environment created by the employment relationship, including the temporal and spatial boundaries established, and (3) the notion that the act in question was undertaken in furtherance of the employer's purpose.

2. Palmerton was acting in the course of his employment at the time of the accident. It was undisputed that an employment relation-

ship existed between the Roscommon County Sheriff's Department (a governmental agency) and Palmerton. Further, the circumstances of the work environment created by the employment relationship encompassed Palmerton's act of giving airboat rides at the festival. Although the festival was perhaps not within the typical temporal and spatial boundaries of Palmerton's employment, it was undisputed that his employer had requested that qualified deputies provide airboat rides to the public that day as part of the public relations activities of the sheriff's department. Relevant to this factor is whether the employee was performing work assigned by the employer or engaging in a course of conduct subject to the employer's control. Had Palmerton not been in an employment relationship with the sheriff's department, he would not have been driving the airboat at the time of the accident. An injury arises out of the course of employment when it occurs as a circumstance of or incident to the employment relationship. The record demonstrated that Palmerton undertook driving the airboat in furtherance of his employer's purpose. He approached the deputy giving rides to see if that deputy needed any assistance. The sheriff indicated that he would have preferred to use one of the off-duty deputies, but all had declined, though Palmerton's plans subsequently fell through and he went to the festival with his family. The on-duty deputy would have given the airboat ride had Palmerton not offered to do so.

3. It was not dispositive that Palmerton's employer had not specifically instructed him to provide airboat rides that day. Indeed, even if an act is contrary to the employer's instructions, it may be within the course of employment if the employee accomplished the act in furtherance of or in the interest of the employer's business. Further, it was not dispositive that Palmerton was not compensated for his service because an employee's gratuitous work may still be within the course of his or her employment. Palmerton's operation of the airboat was in furtherance of his employer's purpose. Palmerton gave a ride to not only his own family, but two other children. Palmerton's relatives were members of the general public, as were the other children. The fact that Palmerton may have been motivated, at least in part, by a desire to give his family a ride on the airboat does not change the fact that the act performed was in furtherance of his employer's purpose.

Affirmed.

GOVERNMENTAL IMMUNITY — EMPLOYEES — INJURIES CAUSED IN THE COURSE OF EMPLOYMENT.

The governmental immunity act, MCL 691.1401 *et seq.*, generally provides immunity from tort claims to governmental agencies

engaged in a governmental function, as well as governmental officers, agents, or employees; MCL 691.1407(2) provides in part that each officer and employee of a governmental agency is immune from tort liability for an injury to a person or damage to property caused by the officer or employee while in the course of employment if certain other requirements are met; an injury arises out of the course of employment when it occurs as a circumstance of or incident to the employment relationship; the necessary considerations for a course of employment are (1) the existence of an employment relationship, (2) the circumstances of the work environment created by the employment relationship, including the temporal and spatial boundaries established, and (3) the notion that the act in question was undertaken in furtherance of the employer's purpose; whether the employee was performing work assigned by the employer or engaging in a course of conduct subject to the employer's control is relevant when considering the work environment; even if an act is contrary to the employer's instructions, it may be within the course of employment if the employee accomplished the act in furtherance of or in the interest of the employer's business; moreover, an employee's gratuitous work may still be within the course of his or her employment.

*Smith & Johnson, Attorneys, P.C.* (by *Bradley D. Wierda* and *Barbara A. Assendelft*), for plaintiff.

*Johnson, Rosati, Schultz & Joppich, P.C.* (by *Jason D. Kolkema*), for defendants.

Before: BOONSTRA, P.J., and SAAD and HOEKSTRA, JJ.

BOONSTRA, P.J. Plaintiff appeals the trial court's grant of summary disposition to defendants on the grounds of governmental immunity. Plaintiff only challenges the trial court's ruling with respect to defendant A. J. Palmerton, and only insofar as the trial court held that Palmerton was acting "in the course of employment" when plaintiff was injured and therefore was entitled to qualified governmental immunity pursuant to MCL 691.1407(2). For the reasons stated in this opinion, we affirm.

I. BASIC FACTS AND PROCEDURAL HISTORY

This case arises out of an accident that occurred on February 20, 2010, on the frozen surface of Higgins Lake in Roscommon County. Plaintiff was out on the ice of the lake with a small group of people with snowmobiles during the "Winterfest" festival, which they had attended earlier. Plaintiff recalled observing an "airboat" on the ice when they first arrived at the festival, although he did not pay much attention to it.

During Winterfest, the Roscommon County Sheriff's Department provided rides in the airboat to the general public. Defendant Randall Stevenson, the Roscommon County Sheriff, had previously asked deputies who were trained in the airboat's operation and who would be off duty that day whether they would be willing to provide airboat rides at the festival; however, all the off-duty deputies had declined. Palmerton was one of those deputies; he declined because he had plans to visit family that day. Eventually Deputy Jeff Grieser, an on-duty officer, was chosen to provide the rides.

Palmerton's plans to visit relatives fell through, so he decided to take his family to Winterfest. Palmerton was not on duty that day. Palmerton and his family attended some activities at the festival. At some point, Palmerton stated that he went over to the airboat "to see if Deputy Grieser would need any assistance with" the airboat rides. Palmerton specifically testified that he "showed up to help out anyway." Palmerton brought his wife and son with him. Palmerton stated that he asked Grieser, "Hey, do you need any help?" and that Grieser responded that he was about to give his last ride of the day. Palmerton testified that Grieser appeared willing to give Palmerton's oldest child a ride in the airboat. Palmerton stated that some neighbors of his, the Schwartzes, who had two young boys, also approached

the airboat because their children wanted a ride. Palmerton stated that he told Grieser, "Oh, you've been driving it all day. I can take my family out" and that he told Grieser he would drive the airboat since he wanted to help him that day and "give him a break . . . ." Palmerton took his mother, his son, and the two Schwartz boys for a ride.

The airboat in question was gas-powered and propelled forward by a large rear-facing fan; the airboat does not have brakes. The responsiveness of the controls depends on numerous factors, including the type of terrain.

At the time Palmerton took his group out for an airboat ride, plaintiff and members of his group were standing on the ice around their snowmobiles about a quarter-mile away from Winterfest. Plaintiff stated that he had allowed his friend's daughter, Megan, to take his snowmobile for a ride. Plaintiff stated that Megan rode off in a westward direction on the snowmobile and that he noted that the airboat came between Megan and him. Plaintiff noticed that the airboat began to turn back around, but he did not pay a great deal of attention to it.

Palmerton testified that he took the airboat in a generally southwest direction for about 10 to 15 minutes before deciding to head back. Palmerton began to turn the airboat when he was about 150 feet past plaintiff's group; he stated that this distance was "well past what would normally be safe . . . ." As he made the turn, Palmerton stated that the snow "kind of grabbed" the airboat, and it ended up pointed directly at the group. Palmerton stated that he tried to turn the airboat in either direction with no success. As the airboat was still heading toward the group, Palmerton

decided to take his foot off the accelerator so that if there was a collision, it would be at a slow speed.

Plaintiff noticed that the airboat was coming closer, but did not feel that he was in any danger. The airboat struck a snowmobile and slid towards plaintiff, pinning his leg between the boat and a snowmobile. Plaintiff stated that the airboat was going no more than five miles per hour; Palmerton estimates that it was no more than four miles per hour. Plaintiff suffered a severe injury to his right knee that required two surgeries and resulted in total disability from his job as a sheriff's deputy for Crawford County.

Plaintiff filed suit against Palmerton, Roscommon County, and Stevenson. Plaintiff asserted a gross negligence claim against Palmerton and ordinary negligence claims against all the defendants. Plaintiff also asserted that his ordinary negligence claim was in avoidance of governmental immunity under the motor vehicle exception to governmental immunity, MCL 691.1405, and further that Roscommon County was not engaged in a governmental function.

Defendants responded by moving for summary disposition on the grounds of governmental immunity. Defendants principally argued that the airboat was not a motor vehicle, that Stevenson was entitled to absolute immunity as a high-ranking elected official, and that Palmerton had not been grossly negligent. In responding to defendants' motion, plaintiff argued in part that Palmerton was not acting in the course of his employment at the time of the accident.

After oral argument, the trial court granted summary disposition in favor of each defendant pursuant to MCR 2.116(C)(7). On appeal, plaintiff challenges only the grant of summary disposition to Palmerton and

specifically limits the appeal to whether Palmerton was acting in the course of his employment when the accident occurred.

## II. STANDARD OF REVIEW

This Court reviews de novo a trial court's grant of summary disposition under MCR 2.116(C)(7). *Oliver v Smith*, 290 Mich App 678, 683; 810 NW2d 57 (2010). In reviewing a motion for summary disposition under MCR 2.116(C)(7), a court considers the affidavits, pleadings, and other documentary evidence presented by the parties and accepts the plaintiff's well-pleaded allegations, except those contradicted by documentary evidence, as true. *Id.* "[T]he substance or content of the supporting proofs must be admissible in evidence." *Maiden v Rozwood*, 461 Mich 109, 119; 597 NW2d 817 (1999). The evidence submitted must be considered "in the light most favorable to the opposing party." *MEEMIC Ins Co v DTE Energy Co*, 292 Mich App 278, 280; 807 NW2d 407 (2011).

## III. COURSE OF EMPLOYMENT

The governmental immunity act, MCL 691.1401 *et seq.*, generally provides immunity from tort claims to governmental agencies engaged in a governmental function, as well as governmental officers, agents, or employees. The relevant statutory provision, MCL 691.1407(2), provides:

> Except as otherwise provided in this section, and without regard to the discretionary or ministerial nature of the conduct in question, each officer and employee of a governmental agency, each volunteer acting on behalf of a governmental agency, and each member of a board, council, commission, or statutorily created task force of a governmental agency is immune from tort liability for an injury to

a person or damage to property caused by the officer, employee, or member while in the course of employment or service or caused by the volunteer while acting on behalf of a governmental agency if all of the following are met:

(a) The officer, employee, member, or volunteer is acting or reasonably believes he or she is acting within the scope of his or her authority.

(b) The governmental agency is engaged in the exercise or discharge of a governmental function.

(c) The officer's, employee's, member's, or volunteer's conduct does not amount to gross negligence that is the proximate cause of the injury or damage.

Although there was some discussion before the trial court about whether Palmerton was a volunteer under the statute, neither party argues on appeal that Palmerton was a volunteer for purposes of governmental immunity.[1] Instead, plaintiff presents a very narrow argument: that Palmerton was not acting in the course of his employment with the Roscommon County Sheriff's Department when the accident occurred. The trial court found that "at the point in time when he operated the airboat in question, [Palmerton] undertook that act during the course of his employment." The trial court further found that Palmerton "was acting within the scope of his authority," or reasonably believed that he was so acting, at the time of the accident.

This Court and our Supreme Court have often conflated the "course of employment" and "scope of his or her authority" requirements of MCL 691.1407(2). *Backus v Kauffman (On Rehearing)*, 238 Mich App 402, 406; 605 NW2d 690 (1999). However, this "does not

---

[1] Under the governmental immunity statute, " '[v]olunteer' means an individual who is specifically designated as a volunteer and who is acting solely on behalf of a governmental agency." MCL 691.1401(i). The trial court held that Palmerton did not meet this statutory definition, and that ruling is not contested on appeal.

mean . . . that our courts have concluded that the 'course of employment' and 'scope of his or her authority' requirements are coextensive." *Id.* at 407. Such a conclusion would, in fact, violate the rule of statutory construction that cautions courts to avoid construing statutory provisions so as to render portions of the statute surplusage. *Id.* Rather, courts tend to follow this approach when "the question whether the two requirements have been satisfied is easily disposed of." *Id.*

Plaintiff specifically limits his claim of error to the trial court's finding that Palmerton was acting in the course of his employment, not whether he was acting or reasonably believed he was acting within the scope of his authority. Plaintiff is correct that, absent a finding of "course of employment," a court would have no need to reach MCL 691.1407(2)(a). The plain language of the statute applies subdivisions (a) through (c) only to an "officer, employee, or member while in the course of employment or service" or a "volunteer while acting on behalf of a governmental agency." MCL 691.1407(2). Clear statutory language must be enforced as written. *Velez v Tuma*, 492 Mich 1, 16-17; 821 NW2d 432 (2012).

The necessary considerations for a course of employment are (1) the existence of an employment relationship, (2) the circumstances of the work environment created by the employment relationship, including the "temporal and spatial boundaries established," and (3) "the notion that the act in question was undertaken in furtherance of the employer's purpose." *Backus*, 238 Mich App at 407-408, citing, among other authorities, 2 Restatement Agency, 2d, §§ 228(1)(b) and (c), 233-235, pp 504, 516, 518, 520, and Black's Law Dictionary (7th ed), p 356.

We conclude that defendant was acting in the course of his employment at the time of the accident. It is undis-

puted that an employment relationship existed between the Roscommon County Sheriff's Department—a governmental agency—and Palmerton.

Further, the circumstances of the work environment created by the employment relationship encompassed Palmerton's act of giving airboat rides at Winterfest. Although Winterfest was perhaps not within the typical "temporal and spatial boundaries" of Palmerton's employment, it is undisputed that his employer requested that qualified deputies provide airboat rides to the public that day as part of the public relations activities of the sheriff's department. Relevant to this factor is whether the employee is "performing work assigned by the employer or engaging in a course of conduct subject to the employer's control." See 2 Restatement Agency, 3d, § 7.07(2), p 198. We conclude that Palmerton was. Further, had Palmerton not been in an employment relationship with the sheriff's department, he would not have been driving the airboat at the time of the accident. "An injury arises out of the course of employment when it occurs as a circumstance of or incident to the employment relationship." *Calovecchi v Michigan*, 223 Mich App 349, 352; 566 NW2d 40 (1997), aff'd 461 Mich 616 (2000). For these reasons, we hold that Palmerton's operation of the airboat to give rides to members of the public was within the circumstances of the work environment created by his employment relationship.

Finally, the record before this Court demonstrates that Palmerton undertook driving the airboat in furtherance of his employer's purpose. Palmerton stated that he approached Grieser to see if he needed any assistance with the airboat rides and asked him if he needed help. Further, as a qualified airboat operator, Palmerton had previously been asked by his employer

to assist with giving rides at the festival. In fact, Stevenson indicated that he would have preferred to use one of the off-duty deputies rather than Grieser, who was on duty. Additionally, Palmerton's deposition testimony supports the inference that Grieser would have given the airboat ride had Palmerton not offered to do so.

We do not find it dispositive that Palmerton was not specifically instructed by his employer to provide airboat rides that day. Indeed, even if an act is *contrary* to an employer's instructions, it may be within the course of employment if "the employee accomplished the act in furtherance, or [in] the interest, of the employer's business." *Hamed v Wayne Co*, 490 Mich 1, 11; 803 NW2d 237 (2011). Further, it is not dispositive that Palmerton was not compensated for his service, as an employee's gratuitous work may still be within the course of his employment. See 2 Restatement Agency, 3d, § 7.07(3)(b), p 198. We therefore hold that Palmerton's operation of the airboat was in furtherance of his employer's purpose.

In so holding, we find plaintiff's citation of *Saily v 500 Bushel Club*, 332 Mich 286; 50 NW2d 781 (1952), unpersuasive. In *Saily*, the employee in question was explicitly *not* acting in furtherance of her employer's purpose when she was attacked by a deer; in addition to being off duty, she was also "not engaged in anything for the benefit of the employer or incident to the employment" and was not, by virtue of her employment, "exposed to greater hazards of attacks by the deer than was common to any one happening in that locality for whatever purpose." *Id.* at 288-290. As stated, Palmerton's activity was in furtherance of his employer's purpose, and he would not have been involved in the accident had he not been in an employ-

ment relationship with the sheriff's department. Similarly, plaintiff's comparison to the unpublished case of *Bukowski v Mich Twp Participating Plan*, unpublished opinion per curiam of the Court of Appeals, decided October 18, 2005 (Docket No. 262564), p 3, is unpersuasive[2] because this Court found, under the circumstances of that case, that no benefit had accrued to the plaintiff's employer when the plaintiff was driving to work off duty and was not required to carry his weapon or required to respond to situations requiring police intervention. Thus, this Court found no reason not to apply the general rule that "an employee who is merely driving to work is not considered to be within the scope of his employment." *Id.*, citing *Cambrun v Northwest Sch Dist/Jackson Community Sch (On Remand)*, 220 Mich App 358, 365; 559 NW2d 370 (1996). Palmerton, although off duty, was not merely driving to work and not merely entertaining himself while off duty, but was assisting Grieser in giving airboat rides in furtherance of his employer's purpose.

The basis of plaintiff's analogy to *Saily* and *Bukowski* is that Palmerton was merely "giving his family a ride" and was not acting in furtherance of his employer's goals. We disagree. As stated, Palmerton testified that he asked Grieser if he needed help with his task of giving airboat rides to the public. Palmerton eventually gave a ride to not only his own family, but two other children. Palmerton's relatives were members of the general public, as were the other children. The fact that Palmerton may have been *motivated*, at least in part, by a desire to give his family a ride on the

---

[2] Unpublished opinions of this Court have no precedential effect, but may be considered persuasive. MCR 7.215(C)(1); *Paris Meadows, LLC v City of Kentwood*, 287 Mich App 136, 145 n 3; 783 NW2d 133 (2010).

airboat does not change the fact that the *act performed* was in furtherance of his employer's purpose.

Because all the factors elucidated in *Backus* were met here, we hold that the trial court correctly determined that Palmerton was acting in the course of his employment when the accident occurred.[3]

Affirmed.

SAAD and HOEKSTRA, JJ., concurred with BOONSTRA, P.J.

---

[3] Because plaintiff has expressly limited his appeal to this issue, we need not address other aspects of the trial court's ruling. See *Mich Ed Ass'n v Secretary of State*, 280 Mich App 477, 488; 761 NW2d 234 (2008) (stating that this Court will generally limit review to issues set forth in the appellant's questions presented), aff'd 489 Mich 194 (2011). We therefore do not disturb the trial court's holding that Palmerton's decisions to operate the airboat and his actual operation of the airboat did not constitute gross negligence. We also do not disturb the finding that Palmerton was acting within the scope of his authority, or at least that he reasonably believed he was so acting. Finally, we do not disturb the trial court's holding that the Roscommon County Sheriff's Department was engaged in a governmental function. In that regard, we note that plaintiff alleged in his complaint that defendants were not engaged in a governmental function. Defendants briefly argued below in their summary disposition motion that "Plaintiff cannot properly dispute that the operation of a police department is a governmental function." As an addendum to their summary disposition motion, defendants submitted the affidavit of Stevenson, which attested that the airboat was "primarily used for the purpose of ice rescues" and was being used at Winterfest "for the purpose of giving rides to members of the general public," "[a]s a public relations matter." While plaintiff's written response to the motion did not address the governmental function issue, the trial court engaged in a colloquy with counsel for the parties specifically on the question of whether public relations was a governmental function of a sheriff's office. The trial court held that it was. On appeal, plaintiff raised only the "course of employment" issue. In response, defendants nonetheless in part argued that plaintiff "cannot properly dispute that the use of the airboat for public relations constitutes a governmental function." In reply, plaintiff reiterated that the governmental function was "not raised" on appeal and "need not be addressed by this Court."