# STATE OF MICHIGAN

# COURT OF APPEALS

GAIL FOSTER,

       Plaintiff-Appellee,

v

KEVIN SZLAGA,

       Defendant-Appellant,

and

COUNTY OF MACOMB,

       Defendant.

UNPUBLISHED
March 1, 2016

No. 324837
Macomb Circuit Court
LC No. 14-002825-NO

Before: SERVITTO, P.J., and SAAD and O'BRIEN, JJ.

PER CURIAM.

Defendant Kevin Szlaga appeals as of right the trial court's November 10, 2014 order denying his motion for summary disposition pursuant to MCR 2.116(C)(7), (C)(8), and (C)(10). We reverse and remand for the entry of an order granting summary disposition in Szlaga's favor.

## I. BACKGROUND

Kevin Szlaga is a Macomb County Deputy Sheriff and a member of the Macomb County Canine Unit. As a deputy sheriff and canine unit member, he was assigned a canine named Zeke. Szlaga is responsible for Zeke's care 24 hours each day. This is true regardless of whether he is on or off duty. On June 21, 2013, the date of the incident underlying this matter, Szlaga and Zeke were at a cottage in Clare County. On that date, plaintiff, Gail Foster, entered the cottage and, eventually, approached Zeke, who bit Foster. While what occurred between the time Foster entered the cottage and when Zeke bit Foster is disputed, i.e., whether Foster was uninvited, whether Zeke was barking as Foster approached, etc., it is undisputed that Zeke bit Foster. Foster subsequently filed this lawsuit against Szlaga and Macomb County.

In her four-count complaint, Foster alleged the following: (1) that both defendants were liable under MCL 287.351, commonly known as Michigan's dog-bite statute; (2) that both defendants were liable for general negligence; (3) that both defendants were liable under common-law strict liability; and (4) that both defendants were liable for gross negligence. Foster

-1-

sought monetary damages as a result of the injuries that she sustained from Zeke's bite. In September 2014, Macomb County moved for summary disposition pursuant to MCR 2.116(C)(7) on governmental immunity grounds. On October 30, 2014, the trial court entered a written order granting Macomb County's motion. It expressly concluded Macomb County was immune from Foster's lawsuit under MCL 691.1407(1) of the Governmental Tort Liability Act (GTLA), MCL 691.1401 *et seq*. It stated as follows: "Accordingly, consistent with the duty to broadly construe the term 'governmental function,' the Court *finds that Deputy Szlaga's possession and maintenance of Zeke, even on vacation, is related to the discharge of a governmental function.*" (Emphasis added.)

Szlaga moved for summary disposition several days later, on November 10, 2014, on the same grounds, pursuant to MCR 2.116(C)(7), as well as on additional grounds, pursuant to MCR 2.116(C)(8) and (C)(10). This time, however, the trial court denied Szlaga's motion on the record at the close of the parties' brief oral arguments. It explained as follows: "I'm going to respectfully deny the motion without prejudice. There is a lot of information that you're providing me that, grant it, we may be I'm sure revisiting this issue at some point in the future, but there has been no discovery [and] you don't know what you don't know at this point." This appeal followed.

## II. ANALYSIS

On appeal, Szlaga argues that the trial court erred in denying his motion for summary disposition as to all of Foster's claims. We agree.

## A. STANDARD OF REVIEW

We review a trial court's decision on a motion for summary disposition de novo. *Oliver v Smith*, 290 Mich App 678, 683; 810 NW2d 57 (2010). Summary disposition pursuant to MCR 2.116(C)(7) is appropriate, as it relates to this case, when the undisputed facts establish that the plaintiff's claim is barred by governmental immunity. Though not required, a party moving for summary disposition pursuant to MCR 2.116(C)(7) may support his or her motion with affidavits, admissions, depositions, or other documentary evidence to support his or her position. *Petipren v Jaskowski*, 494 Mich 190, 201; 833 NW2d 247 (2013). Ultimately, "[i]f the facts are not in dispute and reasonable minds could not differ concerning the legal effect of those facts, whether a claim is barred by immunity is a question for the court to decide as a matter of law." *Poppen v Tovey*, 256 Mich App 351, 354; 664 NW2d 269 (2003).

## B. GOVERNMENTAL IMMUNITY

The GTLA generally provides immunity to governmental agencies, officers, agents, and employees engaged in a governmental function from all tort claims. The relevant statutory provision, MCL 691.1407(2), provides as follows:

Except as otherwise provided in this section, and without regard to the discretionary or ministerial nature of the conduct in question, each officer and employee of a governmental agency, each volunteer acting on behalf of a governmental agency, and each member of a board, council, commission, or statutorily created task force of a governmental agency is immune from tort

liability for an injury to a person or damage to property caused by the officer, employee, or member while in the course of employment or service or caused by the volunteer while acting on behalf of a governmental agency if all of the following are met:

(a) The officer, employee, member, or volunteer is acting or reasonably believes he or she is acting within the scope of his or her authority.

(b) The governmental agency is engaged in the exercise or discharge of a governmental function.

(c) The officer's, employee's, member's, or volunteer's conduct does not amount to gross negligence that is the proximate cause of the injury or damage.

The arguments raised by the parties can, generally, be boiled down to one simple issue—was Szlaga acting in the course of his employment when Zeke bit Foster? We conclude that, as a matter of law, he was.

## 1. "THE COURSE OF EMPLOYMENT"

Whether a governmental employee was acting in the course of his or her employment is generally determined with reference to common-law tort and agency principles. *Backus v Kauffman (On Rehearing)*, 238 Mich App 402, 407; 605 NW2d 690 (1999). In determining whether a governmental employee was acting in the course of his or her employment, courts necessarily consider (1) whether an employment relationship exists; (2) if one does, the circumstances of the work environment; and (3) "the notion that the act in question was undertaken in furtherance of the employer's purpose." *Id*. at 407-408.

Considering each in this case, we conclude that all three are present. First, an employment relationship obviously exists between Szlaga, i.e, the governmental employee, and Macomb County, i.e., the government. Further, the circumstances of that work environment included Szlaga's possession and maintenance of Zeke, even outside of Macomb County while off duty. While it is true that this consideration includes "the temporal and spatial boundaries" of Szlaga's employment, *Backus*, 238 Mich App at 407-408, we reject the imposition of a bright-line boundary as Foster suggests. Szlaga was undisputedly responsible for possessing and maintaining Zeke 24 hours per day, regardless of whether he was on or off duty, on vacation, or in another county. As Szlaga suggests, Zeke is not equivalent to a patrol vehicle that can simply be left unattended at the police station. Instead, someone must be responsible for Zeke's well-being, and Macomb County, the governmental employer in this case, has expressly and unequivocally placed that responsibility on Szlaga as a condition of his employment and as a member of the canine unit. "[P]erforming work assigned by the employer or engaging in a course of conduct subject to the employer's control" is relevant to this consideration. 2 Restatement Agency, 3d, § 7.07(2), p 198. Stated differently, "[a]n injury arises out of the course of employment when it occurs as a circumstance of or incident to the employment relationship." *Calovecchi v State of Michigan*, 223 Mich App 349, 352; 566 NW2d 40 (1997). At the risk of stating the obvious, had Szlaga not been employed with Macomb County as a deputy sheriff and responsible for Zeke as a member of the canine unit at the time that this

incident occurred, it is hard to imagine that he would have had Zeke with him at the cottage. Finally, Szlaga brought Zeke to the cottage in furtherance of his employer's purpose. Stated simply, as he was required to possess and maintain Zeke at all times, this included times when he was off duty and outside of Macomb County.

Perhaps the strongest support for our conclusion comes from the fact that the trial court reached the exact same result, albeit in relation to Macomb County, just 11 days before entering the order at issue in this appeal. As stated above, the trial court granted Macomb County's motion for summary disposition pursuant to MCR 2.116(C)(7) and concluded as follows in doing so: "Accordingly, consistent with the duty to broadly construe the term 'governmental function,' the Court *finds that Deputy Szlaga's possession and maintenance of Zeke, even on vacation, is related to the discharge of a governmental function*." (Emphasis added.) In our review of the record, we discern no appropriate reason for Szlaga's actions, i.e., possessing and maintaining Zeke, to constitute the discharge of a governmental function as it relates to Macomb County but not as it relates to Szlaga. Stated differently, we find each of the trial court's orders on the defendants' motions for summary disposition to be at odds with the other, and, for the reasons set forth above, we conclude that the first order, not the order appealed in this case, was the correct one of the two.

Equally persuasive in our minds is Szlaga's reliance on *Niederhouse v Palmerton*, 300 Mich App 625; 836 NW2d 176 (2013). In that case, an off-duty police officer assisted in providing airboat rides during Winterfest in Roscommon County. *Id*. at 628. Toward the conclusion of a ride, the officer eventually lost control of the airboat and struck a snowmobile. *Id*. at 629-630. As a result of the collision, a bystander's leg was pinned between the airboat and the snowmobile. *Id*. at 630. The bystander sued the off-duty officer for gross and ordinary negligence, and the officer responded with a motion for summary disposition pursuant to MCR 2.116(C)(7) on the grounds of governmental immunity. *Id*. at 630. The trial court agreed with the officer, and we were presented with an issue on appeal strikingly similar to that raised in this case—did the officer's actions at issue occur in the course of his employment? *Id*. at 630-631. In an analysis that mirrors the one above, we concluded that, despite the fact that the officer was off duty and not engaging in what one may commonly consider an "ordinary" police function, the officer's actions were carried out in the course of his employment. *Id*. at 634-635. This was true despite the fact that the officer "was not specifically instructed by his employer to provide airboat rides that day." *Id*. at 635. While factually different, the same conclusion nevertheless prevails in this case. Giving airboat rides and caring for a police dog, while likely enjoyable, are both activities that both of these officers would not have done had they not been employed by their respective governmental agencies. See *id*. at 634 (stating that "had [the officer] not been in an employment relationship with the sheriff's department, he would not have been driving the airboat at the time of the accident.). See also *id*. at 635 (stating that "he would not have been involved in the accident had he not been in an employment relationship with the sheriff's department.").

Accordingly, in light of the above considerations, we conclude that Szlaga was acting in the course of his employment for purposes of MCL 691.1407(2) as a matter of law. Thus, because Szlaga, a governmental employee, was immune from all liability as asserted by Foster in her complaint, the trial court erred in denying Szlaga's motion for summary disposition pursuant to MCR 2.116(C)(7).

Foster's argument on appeal does nothing to refute such a conclusion. Foster argues that Szlaga was not acting in the course of his employment and cites various nonbinding caselaw to support her position. At the outset, we reject that argument simply because we are not bound by any of the cited legal authority. See MCR 7.215(J)(1). Furthermore, each of the nonbinding cases are distinguishable from the matter at hand. In *Secosky v Sanders*, unpublished opinion per curiam of the Court of Appeals, issued October 21, 2014 (Docket Nos. 316441, 316544, 316688), pp 6-9, we affirmed a trial court's denial of summary disposition on governmental immunity grounds in a situation where a student attending a university for a fellowship was involved in an accident while using one of the university's vehicles "in a purely recreational outing" that she voluntary[ily] participat[ed]" in. In *Bukowski v Mich Twp Participating Plan*, unpublished opinion per curiam of the Court of Appeals, issued October 18, 2005 (Docket No. 262564), pp 3-4, we affirmed a trial court's denial of summary disposition on governmental immunity grounds in a situation where an off-duty police officer was involved in an automobile accident while driving a patrol vehicle. What is important to discern from these cases is that, in each, the governmental employee was *not* required to do the action at issue. In *Secoskey*, the student was *not* required to take the university vehicle for the recreational outing. She could have left it behind. In *Bukowski*, the off-duty officer was not required to take the patrol vehicle. He could have left it behind. In our case, however, Szlaga *was* required to take Zeke to his cottage, and he could *not* have left him behind. Foster also relies on *Chambo v City of Detroit*, 83 Mich App 623, 624-625; 269 NW2d 243 (1978), a workmen's compensation case in which a police officer was injured in an automobile accident on his way to his duty station and unable to work because of those injuries. Recognizing that the officer "was not in a position to benefit the City of Detroit" as he was in the City of Dearborn at the time of the accident, we reversed an award in the officer's favor. *Id.* at 630-631. That case is likewise distinguishable because, in this case, Szlaga was in a position to benefit Macomb County—he was possessing and maintaining Zeke. Thus, none of the cases primarily relied on by Foster impact our conclusion in this matter.

Even considering those cases, however, we nevertheless conclude that Foster's argument must fail. She claims that Szlaga was not acting in the course of his employment because he was not in or near Macomb County "and had no work obligations for his employer." As discussed above, this argument ignores Szlaga's obligations to possess and maintain Zeke, regardless of Szlaga's or Zeke's physical location. We disagree with Foster's conclusory claims that "[g]rooming and feeding purposes have no relevance to police work for Macomb County." Again, someone was responsible for possessing and maintaining Zeke, and Macomb County, Szlaga's governmental employer, placed that responsibility squarely on Szlaga as a condition of his employment and as a member of the canine unit. In his answers to Foster's interrogatories, Szlaga clearly explained that he was responsible for maintaining his relationship with Zeke as well as feeding and grooming Zeke at all times. In essence, plaintiff requests that we implement a bright-line rule requiring that governmental immunity only apply when "effectuating an arrest," "pursuing a suspect," or "defusing a situation." We decline to narrow governmental immunity to such a specific series of circumstances, especially in light of the fact that it is the exceptions, *not* the general rule of immunity, that is to be construed narrowly. *Stanton v City of Battle Creek*, 466 Mich 611, 618; 647 NW2d 508 (2002); *Nawrocki v Macomb Co Rd Comm'n*, 463 Mich 143, 159; 615 NW2d 702 (2000).

## 2. GROSS NEGLIGENCE

Even if governmental immunity applies, Foster contends, the trial court's decision should nevertheless be affirmed because Szlaga's conduct at issue amounted to gross negligence. See MCL 691.1407(2)(c). Foster's argument is meritless. She claims that, "even if [Szlaga] was ruled to be in the course and scope of his employment, Szlaga's gross negligence was the proximate cause of Foster's injury and therefore he is still not entitled to governmental immunity." She provides little, if any, indication as to how Szlaga's conduct was grossly negligent. Instead, she repeatedly states that his conduct was not in the course of his employment, but that fact, alone, does not automatically render his conduct grossly negligent. Gross negligence is "conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results." MCL 691.1407(8)(a). In short, Foster points to, and we find, nothing in the record to support a conclusion that Szlaga's conduct was grossly negligent. While she makes several unsupported claims that Szlaga "should have caged Zeke" or "been at Zeke's side at all times" because Zeke was "abnormally vicious," these conclusory claims, unsupported by the record, are simply insufficient to avoid summary disposition.

## C. THE DOG-BITE STATUTE

While irrelevant in light of our conclusion above, see *Tate v City of Grand Rapids*, 256 Mich App 656, 658-661; 671 NW2d 84 (2003) (explaining that a lawsuit alleging a violation of MCL 287.351(1), the dog-bite statute, is subject to the GTLA), we will also briefly address the parties' arguments as to whether Szlaga was an "owner" for purposes of MCL 287.351(1). MCL 287.351(1) provides as follows:

> If a dog bites a person, without provocation while the person is on public property, or lawfully on private property, including the property of the owner of the dog, the owner of the dog shall be liable for any damages suffered by the person bitten, regardless of the former viciousness of the dog or the owner's knowledge of such viciousness.

Contrary to Foster's assertion, the term "owner" is not statutorily defined for purposes of MCL 287.351(1). See *Trager v Thor*, 199 Mich App 223, 229-232; 501 NW2d 251 (1993), aff'd in part, rev'd in part 445 Mich 95 (1994). Thus, we turn to the plain and ordinary definition of "owner." *Koontz v Ameritech Servs, Inc*, 466 Mich 304, 312; 645 NW2d 34 (2002). *Merriam-Webster's Collegiate Dictionary* (2003) defines "own" as "belonging to oneself or itself[.]" While additional analysis is necessary to take that definition and use it to determine whether Szlaga owns Zeke, suffice it to say that he does not as a matter of law. Szlaga provided the affidavit of Macomb County Undersheriff Kent Lagerquist, which included sworn testimony that Zeke belonged to Macomb County, not Szlaga, as well as his own interrogatory answers indicating the same. Foster did not respond to this evidence with any evidence of her own; rather, she merely claims that because "Szlaga was in possession of the dog, kept the dog, [and] took care of the dog," he was automatically "an owner and/or constructive owner of the dog." If not abandoned, see *Peterson Novelties, Inc v City of Berkley*, 259 Mich App 1, 14; 672 NW2d 351 (2003), this conclusory assertion is not supported by fact or law. We find nothing in the plain language of the statute that would support an interpretation that simply possessing, keeping, and taking care of a dog constitutes ownership for purposes of MCL 287.351(1).

## D. INCOMPLETE DISCOVERY

To the extent that Foster also requests that the trial court's order denying summary disposition be affirmed because "very little discovery has taken place," we decline to do so. While it is true that "summary disposition is premature if granted before discovery on a disputed issue is complete," *State Treasurer v Sheko*, 218 Mich App 185, 190; 553 NW2d 654 (1996), it is important to keep in mind the operative part of that statement—if granted before discovery on a *disputed* issue is complete. Foster points to no fact that is in dispute for purposes of Szlaga's motion. While she claims that, in the general sense, there is a dispute as to whether Szlaga was acting in the course of his employment, she fails to acknowledge that there is no *factual* dispute at issue—the parties agree that Szlaga and Zeke were at the cottage when the bite occurred. Further, at the very least, Foster could have given some sort of indication as to what further discovery was desired. But, she did not.

## III. CONCLUSION

In sum, because Szlaga was entitled to governmental immunity pursuant to MCL 691.1407(2) as a matter of law, we conclude that the trial court erred in denying his motion for summary disposition pursuant to MCR 2.116(7) as to all of Foster's claims. We therefore reverse the trial court's November 10, 2014 order and remand for the entry of an order granting Szlaga summary disposition in full.

Reversed and remanded. We do not retain jurisdiction. Szlaga, being the prevailing party, may tax costs pursuant to MCR 7.219.

/s/ Henry William Saad
/s/ Colleen A. O'Brien