# STATE OF MICHIGAN

# COURT OF APPEALS

BRITTNYE CARLSON,

  Plaintiff-Appellant,

v

MESQUITE, INC., doing business as HENRY
VIII-SOUTH,

  Defendant-Appellee,

and

BRIAN BRADLEY,

  Defendant.

UNPUBLISHED
March 28, 2017

No. 329147
Wayne Circuit Court
LC No. 14-007341-NO

Before: BECKERING, P.J., and SAWYER and SAAD, JJ.

PER CURIAM.

  Plaintiff appeals by leave granted from an order of the circuit court granting summary disposition in favor of defendant Mesquite ("defendant"). We affirm.

  This matter arises from a physical altercation that took place at Henry VIII-South, a strip club owned and operated by defendant. After a fight broke out between two of the club's dancers, defendant Bradley became involved in the altercation assisting in separating the combatants and bystanders. Bradley worked at Henry VIII-South as a part-time bouncer, but was present in the club as a patron at the time of the altercation.[1] Plaintiff was performing as a dancer at the time and was a bystander to the altercation. She sustained an injury to her arm, which she alleges was caused by Bradley when he seized her and pushed her into a doorway in the process of breaking up a fight. Plaintiff bases her claim against defendant as one of vicarious

---

[1] Plaintiff somewhat disputes whether it is established "that Bradley was either on or off-duty that night." But plaintiff also concedes that the only evidence on that point "is the self-serving testimony" of Bradley and the manager.

-1-

liability for Bradley's conduct while acting within the scope of his employment with defendant.[2] She also alleged a claim involving negligent hiring and employment.[3]

The trial court granted defendant's motion for summary disposition under MCR 2.116(C)(10) on plaintiff's vicarious liability claim on the grounds that (1) there was no genuine issue of material fact that Bradley was not acting in the scope of employment at the time of plaintiff's injury and (2) that even if Bradley were acting in the scope of employment, because plaintiff's theory against Bradley was one of assault and battery, defendant would not be vicariously liable for the intentional tort. We review this question de novo. *Rogers v J B Hunt Transport, Inc*, 466 Mich 645, 650; 649 NW2d 23 (2002).

The essential question presented in this case is whether Bradley, who was not "on the clock" at the time of the incident, was acting in the scope and course of his employment when he allegedly caused plaintiff's injury. But, with one exception, all of the cases relied upon by plaintiff in her brief on appeal only focus on one aspect of that inquiry: whether Bradley's actions, which plaintiff characterized in the complaint as constituting the intentional tort of assault and battery, come within the course and scope of his employment. Plaintiff relies upon *Rogers, Stewart v Napuche*, 334 Mich 76; 53 NW2d 676 (1952), *Riley v Roach*, 168 Mich 294; 134 NW 14 (1912), *Bryant v Brannen*, 180 Mich App 87; 446 NW2d 847 (1988), and *Burch v A & G Associates, Inc*, 122 Mich App 798; 333 NW2d 140 (1983). But with the exception of *Riley*, the question presented is whether the employee's actions in each of those cases come within the course and scope of employment.

In *Rogers*, an automobile accident case, it was "undisputed" that the defendant driver was "operating the tractor-trailer in the course of his employment" with the defendant employer. 466 Mich at 648. This case is the farthest from the incident because in *Rogers* the question was whether the employee's default in the suit against him could give rise to automatic vicarious liability of the employer. In *Stewart*, the plaintiff was injured when struck by the employer's bartender, who was clearly on duty at the time. In *Bryant*, the Court held that, as a matter of law, the employee was not acting in the course of his employment when he used deadly force against the plaintiff and the employee did not carry a weapon in the course of his duties as an apartment manager. 280 Mich App at 104. And in *Burch*, the allegations were that a taxicab driver attacked his passenger at the end of a paid ride.

This brings us to *Riley*, which does address the question whether the employee was acting as an employee at the time of the injury. This too was an automobile accident case and involved the defendant's chauffeur. But the Court rejected the vicarious liability issue, noting as follows:

---

[2] It is not entirely clear to us why this matter is proceeding as a tort claim rather than as a workers' compensation claim. But neither party argues that point, so the issue is not before us.

[3] Plaintiff's counsel indicated at the July 30, 2015 motion hearing that they were abandoning this claim and makes no arguments relative to it on appeal.

> We have already quoted from and called attention to the evidence, which shows conclusively, in so far as this record is concerned, that the chauffeur was not acting by authority of defendant, his wife, Miss Nott, or any member of the family, but against the positive and explicit instructions of the defendant. If it can be said that there is any presumption in such a case that the chauffeur was acting within the scope of his general employment, we think that in this case that presumption is completely overthrown by the uncontradicted evidence in the case.

*Riley* could arguably support plaintiff's case if plaintiff could show that Bradley, even though he was off duty, was acting at the behest of his employer. For example, if the manager had called upon Bradley the patron to, in the emergency situation, enter the fray and become Bradley the Bouncer. But Bradley clearly testified in his deposition that he was acting on his own initiative in coming to the aid of the other bouncers:

> Q  Do you feel like it's your job to help them [the other bouncers] out even on your off days?
>
> * * *
>
> A  Okay. No, I don't. It's just it makes sense, though. Like I said, if we're a team we're going to have each other's backs.

At best, plaintiff can point to Bradley's testimony that employees had "helped out" in such situations in the past and Bradley's subjective belief that the manager, Dominic Evitts, would expect them to do so:

> Q  So from your previous experiences, where you had gone to the club and helped out when it was your off day, do you believe from those experiences that Dominic would have wanted you to help out in this instance as well?
>
> * * *
>
> A  O, I would imagine so. He wouldn't say what are you doing, why are you trying to help us out, we got it.

Next, we turn to the case relied upon by defendant, *Eberle Brewing Co v Briscoe Motors, Inc*, 194 Mich 140; 160 NW 440 (1916). This is another early automobile accident case. Here, an automobile being operated by the defendant's employee struck a team of horses, resulting in the death of one of the horses. The employee's negligence was conceded because he was travelling faster than 15 mph. 194 Mich at 141. The question was whether the employee "was at the time in the service of the defendant." *Id.*

The driver, Mr. Greenamyer, worked for the defendant inspecting vehicles being assembled for the defendant at Lewis Spring & Axle Co. When Greenamyer was done working for the day, he volunteered to drive a salesman to another of the defendant's plants and then to the railroad station. He borrowed a vehicle from Lewis Spring & Axle and, while transporting the salesman, the accident occurred. In its opinion, the Court noted the following:

The testimony is undisputed that Greenamyer had finished his work for the day when he left the Lewis Spring & Axle Company plant with the car. There is no testimony tending to prove that he was employed by the Briscoe Motor Company to drive this machine, at this time, or to carry a passenger for his employer, or for any one else. His trip was for the accommodation of the salesman who rode with him, or for his own pleasure, or both. [194 Mich at 144.]

The Court rejected the plaintiff's attempt to invoke the rule that the employer is responsible for his servant's conduct, stating that it "would be an invasion of the rule, and a false application of it, if it was held that a servant may, at any time, volunteer to borrow a car and carry a passenger, or for his own use drive it, at his master's risk." 194 Mich 145-146.

The same principle applies here. Bradley was in the club on his own time and volunteered to come to the aid of his fellow bouncers. We might be inclined to decide differently had the manager requested or demanded that Bradley do so. But the evidence of that is lacking. Accordingly, the trial court properly granted summary disposition in defendant's favor.

Finally, we turn briefly to the dissent in this case. In addition to reviewing the general principles relied upon by plaintiff and attempting to distinguish *Eberle Brewing*, the dissent relies upon a case not argued by plaintiff, namely *Niederhouse v Palmerton*, 300 Mich App 625; 836 NW2d 176 (2013). *Niederhouse*, however, is distinguishable on a number of points.

First, it involved a question of governmental immunity, not employer liability. Indeed, in that case the plaintiff was arguing that the defendant was not acting within the scope of his employment as a sheriff's deputy and, therefore, not entitled to governmental immunity. Second, the defendant had initially been explicitly asked by the employer, the county sheriff, to perform the function. Although he initially declined, at the event he offered to relieve the employee performing the function, Deputy Grieser. Third, while Deputy Grieser was on-duty while performing the function, it was only because, like Deputy Palmerton, all of the off-duty deputies had declined. The sheriff indicated that he would have preferred that the function be performed by an off-duty deputy. Therefore, unlike the case at bar, it was the employer's request and intent that the function be performed by an employee who was "off the clock."

We are not disputing that there may be appropriate cases, such as *Niederhouse*, where an employee who is "off the clock" may nevertheless be considered acting within the course and scope of their employment. We simply do not conclude that this case presents such a situation.

Affirmed. Defendant may tax costs.

/s/ David H. Sawyer
/s/ Henry William Saad